Geoffrey KLEIN and Baylor College
of Medicine, Appellants,

v.

Cynthia HERNANDEZ, as Next Friend
of Nahomy Hernandez, a Minor,
Appellee.

No. 01–06–00569–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

April 17, 2008.

Substituted Concurring Opinion
April 21, 2008.

Alicia Thais Kramer, Marion W. Kruse, Kruse Law Firm, P.C., Houston, for Appellants.

Robert J. Talaska, Theodore Gregory Skarbowski, Talaska Law Firm, P.L.L.C., Houston, for Appellee.

Panel consists of Justices TAFT, JENNINGS, and ALCALA.

## OPINION ON REHEARING

TERRY JENNINGS, Justice.

We issued an opinion and judgment in this appeal on August 3, 2007. Appellants, Baylor College of Medicine ("Baylor") and Dr. Geoffrey Klein, filed motions for rehearing and en banc reconsideration. We grant appellants' motion for rehearing, withdraw our August 3, 2007 opinion, substitute this opinion in its place, and vacate our August 3, 2007 judgment.[1]

In this interlocutory appeal,[2] Baylor and Dr. Klein challenge the trial court's order

---

1. Appellants' motion for en banc reconsideration is moot. *See Brookshire Bros., Inc. v.* *Smith,* 176 S.W.3d 30, 41 n. 4 (Tex.App.-Houston [1st Dist.] 2004, pet. denied).

2. *See* TEX. CIV. PRAC. & REM.CODE ANN.

denying their joint motion to dismiss, for lack of jurisdiction, the claims of appellee, Cynthia Hernandez,[3] as next friend of Nahomy Hernandez, a minor, against Baylor and Klein for their negligence and the trial court's order denying their joint motion for summary judgment. In two points of error, Baylor and Klein contend that the trial court erred in denying their joint motion to dismiss, in which they asserted that they are "immune from suit as a unit of government and its employee" under chapter 312 of Texas Health and Safety Code ("chapter 312"),[4] and in denying their joint summary judgment motion, in which they asserted that they are "immun[e] from liability" under chapter 312 to the extent liability is allowed by section 101.021 of the Texas Civil Practice and Remedies Code.[5]

We dismiss the interlocutory appeals of both Baylor and Dr. Klein.

## Background

Hernandez has sued Baylor and Dr. Klein, alleging a health-care-liability claim against Klein, individually, and against Baylor, under respondeat superior, for the negligent acts of Klein and other unnamed Baylor employees in the delivery of her daughter, Nahomy. In June 1994, Hernandez was admitted to Ben Taub General Hospital ("Ben Taub"), and, during the delivery, Nahomy suffered from a brachial plexus[6] injury to her right arm. Hernandez alleged that Klein's methods of releasing Nahomy's shoulder during the delivery caused the injury.

Baylor, a non-profit medical school, was under contract with the Texas Higher Education Coordinating Board to provide medical training to physicians who provided medical care and services at public-health-care facilities. Dr. Klein was a resident physician in Baylor's obstetrics and gynecology residency program and was assigned to provide medical services to patients at Ben Taub, which is owned and operated by the Harris County Hospital District.

Baylor and Dr. Klein jointly filed a motion to dismiss for lack of jurisdiction and a summary judgment motion, asserting that Baylor and Klein are immune from suit and liability under chapter 312. Before the trial court ruled on the motions, Hernandez non-suited Baylor.[7] At the hearing on the motions, the trial court stated that it would not rule on Baylor's motions because Baylor had been non-suited. Nevertheless, the trial court entered orders denying both Baylor's and Klein's motions.

## Baylor's and Dr. Klein's Joint Issue

In their joint brief, Baylor and Dr. Klein characterize their interlocutory appeals as presenting "an important sovereign immu-

§ 51.014(a) (Vernon Supp.2007).

3. Before the trial court rendered the complained-of orders, Cynthia Hernandez died. Although Hernandez's counsel filed a suggestion of death and moved to appoint Nahomy's aunt as her next friend, Hernandez's name appears on the complained-of orders, and so we refer to Hernandez as the appellee for purposes of this opinion.

4. See TEX. HEALTH & SAFETY CODE ANN. §§ 312.001–.007 (Vernon 2001 & Supp.2007).

5. TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 2005).

6. "Brachial plexus" is defined as a "network of nerves in the neck and axilla, composed of the anterior branches of the lower four cervical and first two thoracic spinal nerves and supplying the chest, shoulder, and arm." THE AMERICAN HERITAGE STEDMAN'S MEDICAL DICTIONARY 110 (2002).

7. All parties agree that the trial court entered an order of non-suit as to Baylor.

nity[8] question involving the trial court's denial of a plea to the jurisdiction and motion for summary judgment in a medical malpractice suit against an entity and its employee who are immune from suit." They contend that the Legislature intended to confer upon them "the status of a governmental/state entity and its employee, including the immunity from suit and liability and right to an interlocutory appeal in these limited circumstances."

Specifically, Baylor and Dr. Klein, in their two points of error, jointly argue that the trial court erred in denying their joint motion to dismiss this case and joint motion for summary judgment because chapter 312 of the Health and Safety Code, specifically sections 312.006 and 312.007, "limits not only the scope of [a]ppellants' liability, but also the extent of the Tort Claims Act's[9] waiver of sovereign immunity from suits alleging injuries involving the 'use of tangible personal or real property.'" They assert, "[w]here, as here, sovereign immunity exists, it deprives a district court of subject matter jurisdiction." Baylor and Klein further assert that the trial court failed "to evaluate the jurisdictional implication of [Hernandez's] failure to plead specific facts or introduce evidence to support [her] negligence claims, specifically regarding the ... 'use of tangible personal or real property....'" They conclude that the trial court "errone-

ously based jurisdiction on [Hernandez's] nonspecific, conclusory allegations and no extrinsic evidence, which is insufficient to waive immunity."

## Jurisdiction Over Baylor's Appeal

Hernandez argues that we lack jurisdiction over Baylor's interlocutory appeal because she non-suited Baylor before the complained-of rulings and because "neither Baylor nor Dr. Klein is a government unit, a political subdivision, or an employee of the state." See TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(5), (8) (Vernon Supp. 2007). Baylor responds that it should be treated as a governmental unit under section 51.014(a)(8). It also asserts that section 51.014(a)(5) allows it to appeal the denial of its summary judgment motion to the extent that it asserted Klein's immunity from liability. See id. § 51.0014(a)(5). Finally, Baylor asserts that the trial court lacked the power to order that Baylor be non-suited. In their joint motion for rehearing, Baylor and Klein assert, in very general terms, that the Legislature has "confer[red] upon [a]ppellants the equivalent status and immunities of a state agency and the employee of a state agency within the meaning of Chapter 312, the [Tort Claims Act][10] and section 51.014 of the Texas Civil Practice and Remedies

---

**8.** We note that "[u]nder [the] centuries-old common-law doctrine" of sovereign immunity, the sovereign is immune from suit and liability. *Ben Bolt–Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdiv. Prop./Cas. Joint Self–Ins. Fund*, 212 S.W.3d 320, 324 (Tex.2006). "The State's sovereign immunity extends to various divisions of state government, including agencies, boards, hospitals, and universities." *Id.* "[G]overnmental immunity similarly protects political subdivisions of the State, including counties, cities, and school districts." *Id.* "Official immunity is an affirmative defense that shields governmental employees from per-

sonal liability so that they are encouraged to vigorously perform their official duties," and "[a] governmental employee is entitled to official immunity for (1) the performance of discretionary duties (2) that are within the scope of the employee's authority, (3) provided that the employee acts in good faith." *Telthorster v. Tennell*, 92 S.W.3d 457, 460–61 (Tex.2002).

**9.** *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.001–.109 (Vernon 2005 & Supp.2007).

**10.** *See* TEX HEALTH & SAFETY CODE ANN. §§ 312.001–.007.

Code, and this Court has jurisdiction to hear this appeal."

■ A party may not appeal an interlocutory order unless authorized by statute. *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 352 (Tex.2001). We must strictly construe statutes authorizing interlocutory appeals. *Id.* at 355.

### Plea to the Jurisdiction by a Governmental Unit

■ Section 51.014(a)(8) of the Civil Practice and Remedies Code provides that a person may appeal from an interlocutory order that "grants or denies a plea to the jurisdiction by a governmental unit[11] as that term is defined in Section 101.001." TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8). Immunity from suit prohibits suits against the state and governmental units, unless consent to suit has been expressly provided, defeats a trial court's subject matter jurisdiction, and is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex.1999).

Baylor does not argue that it is actually a governmental unit. Rather, it contends that sections 312.006(a) and 312.007 of the Health and Safety Code "confer upon [a]ppellants the equivalent status and immunities of a state agency and the employee of a state agency."

■ Section 312.006, entitled "Limitation on Liability," provides,

(a) A ... supported medical ... school ... engaged in coordinated or cooperative medical ... clinical education under Section 312.004, including patient care and the provision or performance of health or dental services or research at a public hospital, *is not liable* for its acts and omissions in connection with those activities *except to the extent and up to the maximum amount of liability of state government under Section 101.023(a)*, Civil Practice and Remedies Code, for the acts and omissions of *a governmental unit of state government under Chapter 101, Civil Practice and Remedies Code.*

(b) The *limitation on liability* provided by this section applies *regardless* of whether the ... supported medical ... school ... is a *"governmental unit"* as defined by Section 101.001, Civil Practice and Remedies Code.

TEX. HEALTH & SAFETY CODE ANN. § 312.006 (Vernon 2001) (emphasis added).

Section 101.023(a) of the Tort Claims Act, entitled "Limitation on Amount of Liability," provides,

Liability of the state government under this chapter is limited to money dam-

---

11. A "governmental unit" is defined as,
    (A) this state and all the several agencies of government that collectively constitute the government of this state, including other agencies bearing different designations, and all departments, bureaus, boards, commissions, offices, agencies, councils, and courts;
    (B) a political subdivision of this state, including any city, county, school district, junior college district, levee improvement district, drainage district, irrigation district, water improvement district, water control and improvement district, water control and preservation district, freshwater supply district, navigation district, conservation and reclamation district, soil conservation district, communication district, public health district, and river authority;
    (C) an emergency service organization; and
    (D) any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(3) (Vernon 2005) (emphasis added).

ages in a maximum amount of $250,000 for each person and $500,000 for each single occurrence for bodily injury or death and $100,000 for each single occurrence for injury to or destruction of property.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.023(a) (Vernon 2005).

Baylor did present summary judgment evidence that it is a supported medical school engaged in the type of medical clinical education [12] required for Baylor to invoke section 312.006. *See* TEX. HEALTH & SAFETY CODE ANN. § 312.002(6) (Vernon Supp.2007). However, section 312.006, with its references to the Tort Claims Act, does not make Baylor the equivalent of a governmental unit that enjoys immunity from suit. Nor does it convert Baylor into a governmental unit authorized to pursue an appeal under section 51.014(a)(8) of the interlocutory appeal statute.

The Legislature, in section 312.006, made no reference to sovereign or governmental immunity from suit. *See id.* § 312.006; *see also Baylor Coll. of Med. v. Hernandez,* 208 S.W.3d 4, 10 (Tex. App.-

Houston [14th Dist.] 2006, pet. denied) (holding that section 312.006(a) does not purport to grant immunity from suit to a supported medical school or to its residents, faculty, or employees).[13] Moreover, the Texas Supreme Court has characterized section 101.023 of the Tort Claims Act as providing "damage caps." *See Kerrville State Hosp. v. Fernandez,* 28 S.W.3d 1, 10 (Tex.2000). Section 101.023 simply places "caps on actual damages" and prohibits "punitive damages." *Id.* at 9. Thus, it does not confer sovereign or governmental immunity, but, rather, it waives such immunity to the extent of the caps. *See Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 698 (Tex.2003).

In *Hernandez,* the Fourteenth Court of Appeals has already considered, and rejected, Baylor's argument that section 312.006(a) grants it immunity from suit. 208 S.W.3d at 9–10. As explained by the Fourteenth Court of Appeals,

By importing the damage caps of section 101.023(a), the Health and Safety Code limits the damages for which a supported medical school is liable. The

---

12. The purpose of chapter 312 is,

   [t]o authorize coordination and cooperation between medical and dental units, supported medical or dental schools, and public hospitals and to remove impediments to that coordination and cooperation in order to: (1) enhance the education of students, interns, residents, and fellows attending a medical and dental unit or a supported medical or dental school; (2) enhance patient care; and (3) avoid any waste of public money.

   TEX. HEALTH & SAFETY CODE ANN. §§ 312.001.

13. Baylor argues that section 312.006(a)'s mere reference to the Tort Claims Act is a recognition that Baylor is immune from suit because the Tort Claims Act "primarily provides immunity from suit" to governmental units. However, the Tort Claims Act does not *create* sovereign or governmental immunity from suit: it merely *waives* such preexisting immunity from suit in certain circumstances.

*See Tex. A & M Univ.-Kingsville v. Lawson,* 87 S.W.3d 518, 520 (Tex.2002) ("In Texas, the bar of sovereign immunity is a creature of the common law and not of any legislative enactment."); *City of Galveston v. State,* 217 S.W.3d 466, 475 (Tex.2007) ("This Court has repeatedly held that sovereign immunity is a creature of the common law and not of any legislative enactment."); *City of Tyler v. Likes,* 962 S.W.2d 489, 494 (Tex.1997) (plurality op.) ("[T]he Tort Claims Act does not create a cause of action; it merely waives sovereign immunity as a bar to a suit that would otherwise exist."); *City of San Benito v. Cantu,* 831 S.W.2d 416, 420 (Tex.App.-Corpus Christi 1992, no writ) ("According to the Texas Supreme Court, the statute [the Texas Tort Claims Act] does not create new duties, but simply waives the common-law doctrine of governmental immunity for the instances specified in the statute.").

plain language of neither statute purports to grant immunity from suit to a supported medical school or to its residents, faculty, or employees. Nevertheless, this is the interpretation appellants urge us to adopt. We are unable to do so.... A damages cap limits damages but does not imply immunity from suit. To the contrary, damages caps such as section 101.023 that "insulate public resources from the reach of judgment creditors" indicate immunity from suit has been waived.

*Id.* at 9–10 (citation omitted) (quoting *Taylor*, 106 S.W.3d at 698) (citations omitted).

As did the Fourteenth Court of Appeals in *Hernandez*, we hold that section 312.006(a) does not make Baylor a governmental unit, immune from suit, nor did it deprive the trial court of subject matter jurisdiction. *See id.* at 10.

■ Section 312.007 of the Health and Safety Code, entitled "Individual Liability," provides,

> (a) A ... supported medical ... school ... *is a state agency*, and a director, trustee, officer, intern, resident, fellow, faculty member, or other associated health care professional or employee of a ... supported medical ... school ... *is an employee of a state agency for purposes of Chapter 104,* Civil Practice and Remedies Code,[14] *and for purposes of determining the liability*, if any, of the person for the person's acts or omissions while engaged in the coordinat-

ed or cooperative activities of the ... school....

> (b) *A judgment* in an action or settlement of a claim against a ... supported medical ... school ... *under Chapter 101,* Civil Practice and Remedies Code,[15] bars any action involving the same subject matter by the claimant against a director, trustee, officer, intern, resident, fellow, faculty member, or other associated health care professional or employee of the ... school ... whose act or omission gave rise to the claim *as if the person were an employee of a governmental unit* against which the claim was asserted as provided under Section 101.106, Civil Practice and Remedies Code.

TEX. HEALTH & SAFETY CODE ANN. § 312.007 (Vernon 2001) (emphasis added).

The Legislature, in section 312.007(a), expressly provided that a supported medical school is a "state agency" only "for *purposes of Chapter 104,* Civil Practice and Remedies Code, *and for purposes of determining the liability,* if any, *of the person* for the person's acts or omissions while engaged in the coordinated or cooperative activities of the ... school...." *See id.* § 312.007(a) (emphasis added). Chapter 104 concerns "State Liability for Conduct of Public Servants." *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 104.001–.009 (Vernon 2005 & Supp.2007). Subsection (a) of section 312.007 limits the situations in which Baylor may be treated as if it were a state agency to those involving indemnity of its employees and contractors (chapter 104)

---

**14.** Chapter 104 of Texas Civil Practice and Remedies Code—entitled, "State Liability for Conduct of Public Servants"—provides the circumstances under which the state must indemnify its employees, former employees, and certain individuals under contract with or in the service of particular state entities for damages, court costs, and attorney's fees.

*See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 104.001–.009 (Vernon 2005 & Supp.2007). The chapter also provides: "This chapter does not waive a defense, immunity, or jurisdictional bar available to the state or its officers, employees, or contractors." *Id.* § 104.008.

**15.** *See id.* §§ 101.001–.109.

and determinations of its employees' (or directors', trustees', officers', interns', residents', fellows', faculty members', or other associated health care professionals') liability, if any. *See* TEX. HEALTH & SAFETY CODE ANN. § 312.007(a).

Accordingly, we hold that section 312.007 of the Health and Safety Code does not make Baylor the equivalent of a governmental unit, immune from suit, and, thus, it did not deprive the trial court of subject matter jurisdiction.

Having held that neither section 312.006(a) nor section 312.007 of the Health and Safety Code makes Baylor the equivalent of a governmental unit, immune from suit, we further hold that the trial court's denial of Baylor's plea to the jurisdiction is not subject to an interlocutory appeal under section 51.014(a)(8) of the Civil Practice and Remedies Code.

### Immunity of an Officer or Employee of the State

Section 51.014(a)(5) of the Civil Practice and Remedies Code provides that a person may appeal from an interlocutory order that "denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(5).

Baylor argues that it is a "person" under section 51.014(a) because it is appealing from an order denying its summary judgment motion, which was based on the assertion of immunity from individual liability by Dr. Klein, and he is treated as a state employee for purposes of ascertaining whether he is individually liable for his allegedly negligent acts.

However, the Texas Supreme Court has expressly stated that only a state official or employee can pursue an interlocutory appeal under section 51.014(a)(5). *See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 843 (Tex. 2007). The court explained,

.... [T]here is no other way to read Section 51.014(a)(5) than to conclude that only an "individual who is an officer or employee of the state or a political subdivision of the state" may appeal an interlocutory order denying a motion for summary judgment. The only other entity that would generally have standing to file such an appeal would be a governmental body, but the words of Section 51.014(a)(5) offer no indication or suggestion that it applies to any entity other than a state official, the only entity which it describes. This stands to reason because an official sued in his individual capacity would assert official immunity as a defense to personal monetary liability, which is well suited for resolution in a motion for summary judgment.

*Id.* (quoting TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(5)); *see also Young v. Villegas*, 231 S.W.3d 1, 3 (Tex.App.-Houston [14th Dist.] 2007, pet. denied).

Accordingly, we hold that section 51.014(a)(5) does not authorize Baylor's interlocutory appeal of the trial court's denial of Baylor's summary judgment motion.

Having held that the trial court's denials of Baylor's plea to the jurisdiction and summary judgment motion are not subject to an interlocutory appeal under either section 51.014(a)(5) or section 51.014(a)(8) of the Civil Practice and Remedies Code, we dismiss Baylor's appeal.[16] Because we

---

16. Given our dismissal of Baylor's interlocutory appeal on jurisdictional grounds, we cannot determine whether Baylor's plea and motion, as a result of the nonsuit, had become moot before the trial court ruled on them. *See Young v. Villegas*, 231 S.W.3d 1, 5–6 (Tex.

dismiss Baylor's interlocutory appeal for lack of jurisdiction, we do not reach Baylor's two points of error.

### Jurisdiction over Dr. Klein's Appeal

Hernandez argues that we lack jurisdiction over Dr. Klein's appeal because "neither Baylor nor Dr. Klein is a government unit, a political subdivision, or an employee of the state." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(5), (8). As noted above, in their joint motion for rehearing, Klein and Baylor assert, in very general terms, that the Legislature has "confer[red] upon [a]ppellants the equivalent status and immunities of a state agency and the employee of a state agency within the meaning of Chapter 312, the [Tort Claims Act] [17] and section 51.014 of the Texas Civil Practice and Remedies Code, and this Court has jurisdiction to hear this appeal."

We again note that a party may not appeal an interlocutory order unless authorized by statute and that we must strictly construe statutes authorizing interlocutory appeals. *Bally Total Fitness Corp.*, 53 S.W.3d at 355.

### Plea to the Jurisdiction by a Governmental Unit

In *Koseoglu*, the Texas Supreme Court held that section 51.014(a)(8) allows an employee of a governmental unit whom the plaintiff sues in his official capacity to appeal the denial of the governmental unit's jurisdictional plea. 233 S.W.3d at 844–45. Having held that Baylor is not a governmental unit for purposes of section 51.014(a)(8), we further hold that section 51.014(a)(8) does not authorize Dr. Klein's interlocutory appeal of the trial court's denial of his plea to the jurisdiction based on governmental immunity from suit.

### Immunity of an Officer or Employee of the State

■ Again, section 51.014(a)(5) expressly provides that only an individual who is "an officer or employee of the state or a political subdivision of the state" may appeal from an interlocutory order that "denies a motion for summary judgment that is based on an assertion of immunity" by the individual. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(5). Summary judgment is the appropriate procedural mechanism to assert immunity from liability. *Baylor Coll. of Med. v. Tate*, 77 S.W.3d 467, 472 (Tex.App.-Houston [1st Dist.] 2002, no pet.).

In *Young*, the Fourteenth Court of Appeals held that section 51.014(a)(5) authorized a Baylor doctor, who was similarly situated to Dr. Klein in the instant case, to appeal the denial of his summary judgment motion, in which he asserted immunity from individual liability. 231 S.W.3d at 7–8. The doctor in *Young* asserted that, although she was not actually an officer or an employee of the state or a political subdivision of the state, she "should be treated as if she were one under section 312.007(a)." *Id.* at 7. After quoting section 312.007(a), the *Young* court, in circular fashion, reasoned,

> In determining the liability, if any, of an employee of a state agency for her acts or omissions, trial courts may rule on motions for summary judgment asserting immunity, and if trial courts deny such motions, then courts of appeals may entertain interlocutory appeals

---

App.-Houston [14th Dist.] 2007, pet. denied). We note that Hernandez's motion to correct the trial court's orders to reflect that it did not rule on Baylor's plea and motion remains pending below.

17. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.001–.109.

from the order denying these motions. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(5). Therefore, we conclude that this court has appellate jurisdiction over Dr. Young's appeal from the trial court's interlocutory order denying the Summary Judgment Motions as to her. *Id.* at 8.

However, the plain language of section 312.007(a), as quoted above, does not confer upon Dr. Klein the immunity from liability enjoyed by an employee of a state agency.[18] Moreover, neither section 312.006, entitled "Limitation on Liability," nor 312.007, entitled "Individual Liability," in any way confers upon Klein or Baylor, as they jointly argue, "sovereign immunity," which must be waived under the Texas Tort Claims Act. Rather, section 312.007(a) expressly provides that a person in Klein's position is to be treated as if he were "an employee of a state agency" only "for *purposes of Chapter 104,* Civil Practice and Remedies Code, *and for purposes of determining the liability,* if any, *of the person* for the person's acts or omissions while engaged in the coordinated or cooperative activities of the ... school...." Tex. Health & Safety Code Ann. § 312.007(a) (emphasis added). Accordingly, we hold that the Legislature's grant of limited liability to Dr. Klein and Baylor and provision of indemnity for Klein in chapter 312 does not amount to a conferral of "sovereign immunity," which deprived the trial court of subject matter jurisdiction, as expressly argued to this Court by Klein and Baylor.

Had the Legislature intended for those similarly situated to Dr. Klein to enjoy the right to an interlocutory appeal in circumstances such as those presented here, it could have expressly provided that right in either section 312.007 of the Health and Safety Code or, more appropriately, in section 51.014(a)(5) of the Civil Practice and Remedies Code. It simply did not.

In regard to the Fourteenth Court of Appeals's holding to the contrary in *Young,* we note that, given that the Legislature has not provided Baylor with the right to appeal the trial court's denial of its jurisdictional plea, it would be oddly inconsistent for the Legislature to provide such a right to Dr. Klein. Why would the Legislature grant doctors, like Klein and Young, the right to appeal their summary judgment motions, but deny their employer, like Baylor, the right to appeal the denial of its jurisdictional plea? There is no logical reason for doing so. As an appellate court, we must construe the pertinent statutes and, in construing them, avoid an absurd or unreasonable result. *See* Tex. Gov't Code Ann. § 311.021 (Vernon 2005) ("In enacting a statute, it is presumed that ... a just and reasonable result is intended."); *Univ. of Tex. Sw. Med. Ctr. v. Loutzenhiser,* 140 S.W.3d 351, 356 & n. 20 (Tex.2004) (court should not construe statutes to lead to absurd results); *Watts v. City of Houston,* 126 S.W.3d 97, 100 (Tex. App.-Houston [1st Dist.] 2003, no pet.) ("We should not adopt a construction that would render a

---

18. Our concurring colleague would hold that "when a private-supported-medical-school employee is sued in his individual capacity for his acts or omissions while engaged in certain of the school's activities, he may invoke the affirmative defense of official immunity from liability, if the facts of the case allow it." However, as conceded in the concurring opinion, although Dr. Klein and Baylor in their summary judgment motion below generally asserted that they have "official immunity" in this case, Dr. Klein made no effort to establish the elements of such a defense. *See Telthorster,* 92 S.W.3d at 461 (noting that governmental employee is entitled to official immunity from personal liability "for (1) the performance of discretionary duties (2) that are within the scope of the employee's authority, (3) provided that the employee acts in good faith").

law or provision absurd or meaningless."). The bottom line is that the Legislature has not authorized any such interlocutory appeals.

Strictly construed, section 51.014(a)(5) of the Civil Practice and Remedies Code authorizes a person to appeal from an order that "denies a motion for summary judgment that is based on an assertion of *immunity* by an individual who is an [actual] officer or employee of the state or a political subdivision of the state." *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(5) (emphasis added). Because section 51.014(a)(5) authorizes a person to appeal from an order that "denies a *motion for summary* judgment that is based on an assertion of *immunity* by an individual who is an officer or employee of the state or a political subdivision of the state," we must respectfully disagree with the Fourteenth Court of Appeals's holding in *Young. See id.* (emphasis added). Accordingly, we hold that section 51.014(a)(5) does not authorize Dr. Klein's interlocutory appeal of the trial court's denial of his summary judgment motion.

Having held that the trial court's denials of Dr. Klein's plea to the jurisdiction and summary judgment motion are not subject to an interlocutory appeal under either sections 51.014(a)(5) or section 51.014(a)(8), we dismiss his appeal.

Because we dismiss Dr. Klein's interlocutory appeal for lack of jurisdiction, we do not reach his two points of error.

## Conclusion

We dismiss Baylor's and Dr. Klein's interlocutory appeals for lack of jurisdiction.

Justice TAFT, concurring in the judgment.

TIM TAFT, Justice, concurring on rehearing.

I withdraw my concurring opinion on rehearing dated April 17, 2008 and substitute this concurring opinion on rehearing in its stead.

I respectfully concur in the panel's judgment on rehearing.

## Baylor's Appeal

In a portion of its opinion on rehearing, the majority holds that we have no jurisdiction under Texas Civil Practice and Remedies Code section 51.014(a)(5) over the appeal of appellant Baylor College of Medicine ("Baylor")—that is, that we have no jurisdiction to the extent that Baylor appeals the denial of its summary-judgment ground that sought judgment based on appellant Dr. Geoffrey Klein's immunity from individual liability. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(5) (Vernon Supp.2007). The majority correctly bases this holding on the Texas Supreme Court's recent opinion in *Texas A & M University System v. Koseoglu,* in which the supreme court indicated that an entity like Baylor would not be considered a "person" within the meaning of section 51.014(a)(5).[1] *See* 233 S.W.3d 835, 843 (Tex.2007).

What the panel does not acknowledge, however, is that the language from *Koseoglu* on which it relies is dictum, not a holding. I write separately to explain why, despite the fact that the relied-upon language from *Koseoglu* is dictum, I agree that we must follow it here. I also write respectfully to request that the Texas Supreme Court revisit this and other dictum from *Koseoglu.*

---

1. The Texas Supreme Court issued its opinion in *Texas A & M University System v. Koseoglu* during the pendency of the motions for re-

hearing and for en banc reconsideration in this appeal.

## A. What We Held Before

Section 51.014(a)(5) provides that *"[a] person* may appeal from an interlocutory order" that "denies a motion for summary judgment that is based on an assertion of immunity *by an individual who is an officer or employee of the state or a political subdivision of the state ...."* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(5) (Vernon Supp.2007) (emphasis added). On original submission, we held that we had jurisdiction under section 51.014(a)(5) over Baylor's appeal from the denial of its summary-judgment motions based on Dr. Klein's immunity from individual liability. *See Klein v. Hernandez,* No. 01–06–00569–CV, 2007 WL 2264539, at *9 (Tex.App.-Houston [1st Dist.] Aug. 3, 2007), *withdrawn,* No. 01–06–00569–CV, 260 S.W.3d 1, 2008 WL 1747479 (Tex. App.-Houston [1st Dist.] Apr. 17, 2008, no pet. h.). We reasoned that, although the term "person" in the preliminary text of section 51.014(a) is not defined, reading "person" to be broader than just the "individual" on whose immunity from liability the summary-judgment motion was based comported with the statutory definition of "person" that applies to the Texas Civil Practice and Remedies Code generally. *Id.* at *8. Under that definition, "person" includes " 'corporation, organization, government or governmental subdivision or agency, business trust, estate, trust, partnership, association, and any other legal entity.' " *Id.* (quoting Tex. Gov't Code Ann. § 311.005(2) (Vernon 2005)). That definition, we determined on original submission, was broad enough to include Baylor. *Id.* at *9.

## B. What Our Implicit Reasoning Was

At the heart of our reasoning concerning section 51.014(a)(5) was the fundamental understanding that the term "person" in the preliminary text of section 51.014(a) is independent of, and not limited by, any language within any of the subsections following it. This understanding is consistent with the grammatical structure of section 51.014(a). The preliminary text contains the subject, verb, preposition, and prepositional object that apply to all subsections: "A person [the common subject] may appeal [the common verb] from an interlocutory order [the common preposition and its object] ... that...." The common subject "person" is modified by nothing. The subsections, in contrast, are alternative restrictive clauses that modify the common prepositional object of the sentence: they are 11 alternative phrases that each modify the common prepositional object "order." Thus, any descriptive language within each of the subsections of section 51.014(a) cannot, as a matter of grammar, modify the common subject of the sentence—"person," in the preliminary language of section 51.014(a). Rather, that descriptive language within the subsections modifies either the sentence's common prepositional object ("order") or modifies phrases that modify that common prepositional object.

For example, regarding subsection (5), the entire statutory sentence can be broken down as follows:

| | |
|---|---|
| Subject: | A person |
| Verb: | may appeal |
| Preposition: | from |
| Prepositional object: | [an interlocutory] order ... |
| Compound restrictive clause modifying the prepositional object: | that denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state. |

Within the restrictive clause that modifies "order," there are multiple restrictive clauses or prepositional phrases, each of which modifies a phrase that, eventually, serves to modify the sentence's prepositional object. Grammatically speaking, the

restrictive clause "who is an officer or employee of the state or a political subdivision of the state" simply cannot be read to modify the common subject "person"; rather, it can modify only the word "individual." This understanding was reflected, albeit not expressly analyzed, in the conclusion reached in our previous opinion.

## C. What *Koseoglu* Did

I set out the bases for our prior opinion's express holding and its implicit reasoning concerning section 51.015(a)(5) because, in the later-issued *Koseoglu*, there is dictum appearing both to support and to undermine that holding and reasoning. For example, in one portion of dictum, the *Koseoglu* court reasons:

> The text of Section 51.014(a) makes it clear that the "who" [who may appeal] applicable to each subsection is the term "person" that appears at the beginning of the statute. There is no indication that the phrase[ ] "an individual who is an officer or employee of the state"... in Section[ ] 51.014(a)(5) ... [is] intended to modify the term "person." Instead, those phrases and others in the various subsections of the statute describe exactly "what" may be appealed from an interlocutory order.

*Koseoglu*, 233 S.W.3d at 842. (I refer herein to the above-quoted dictum as "the First Dictum.") The First Dictum recognizes that the term "person" in the preliminary text of section 51.014(a) (*i.e.*, the statutory sentence's common subject), which defines the entity or person whom the statute allows to appeal, is not modified or limited by the descriptive text that appears within the subsections following it. That is, for purposes of section 51.014(a)(5), the meaning of "person" is not limited in any way by the phrase "an individual who is an officer or employee of the state or a political subdivision of the State." Our previous interpretation of

section 51.014(a)(5) is in accord with the First Dictum of *Koseoglu*.

But further dictum in *Koseoglu* appears to undermine our previous interpretation of section 51.014(a)(5). In particular, the *Koseoglu* court reasoned:

> For example, ... there is no other way to read Section 51.014(a)(5) than to conclude that only an "individual who is an officer or employee of the state or a political subdivision of the state" may appeal an interlocutory order denying a motion for summary judgment. The only other entity that would generally have standing to file such an appeal would be a governmental body, but the words of Section 51.014(a)(5) offer no indication or suggestion that it applies to any entity other than a state official, the only entity which it describes. This stands to reason because an official sued in his individual capacity would assert official immunity as a defense to personal monetary liability, which is well suited for resolution in a motion for summary judgment.

*Id.* at 843. (I refer herein to the above-quoted dictum as "the Second Dictum.") The Second Dictum indicates that the term "person" in the preliminary text of section 51.014(a) is not to be read independently, but should instead be read as being limited by the phrase "an individual who is an officer or employee of the state or a political subdivision of the state" that appears in subsection (5). That is, in the Second Dictum, the *Koseoglu* court views a modifier ("an individual who is an officer or employee of the state or a political subdivision of the state") of the statutory sentence's prepositional object ("order") as also modifying the sentence's subject ("person"). *See id.*

These dicta contradict one another. Specifically, in the Second Dictum, the

court indicates that the restrictive language used in subsection (5) to describe the motion on which the ruling is made also describes the person who may appeal that ruling. This is the opposite of the relationship that the First Dictum, which was based on the statutory sentence's grammatical structure, views the two phrases to have. I do not believe that these two dicta can be reconciled.

One of the reasons for the Second Dictum's departure from the statutory sentence's grammatical structure, and for the resulting contradiction in *Koseoglu's* dicta, appears to be the court's conflation within the Second Dictum of two distinct concepts affecting appellate jurisdiction: (1) one's standing to appeal a ruling because one has a justiciable interest in that ruling, in the abstract, and (2) one's designation under the interlocutory-appeal statute to take the appeal, whether one has a justiciable interest in the ruling or not. The two concepts represent only two of at least four ways in which an appellate court may lack jurisdiction over an appeal. For example, in the case of an interlocutory appeal such as this, an appellate court will lack subject-matter jurisdiction if (1) the appeal is untimely filed;[2] (2) the appeal is rendered moot after its proper perfection;[3] (3) the appellant lacks standing to complain of the interlocutory ruling that is appealed;[4] or (4) no statute or rule allows an interlocutory appeal by that person or from that ruling.[5] Each of these grounds is, as a general rule, independent; the existence of any one deprives the appellate court of jurisdiction over the interlocutory appeal.

In the First Dictum, the *Koseoglu* court does not mention standing (or justiciable interest) to appeal the ruling mentioned in subsection (5), but instead gleans the statute's meaning solely from its grammatical structure, reasoning that the term "person," which designates whom the statute allows to appeal, is not restricted by any language in subsection (5)—or in any other subsections, for that matter. *Koseoglu,* 233 S.W.3d at 842. In contrast, in the Second Dictum, the *Koseoglu* court injects into its reasoning the concept of who has standing (or a justiciable interest) to appeal and then blends that jurisdictional concept with the independent jurisdictional concept of whom the statute allows to appeal. *See id.* at 843 (employing term "standing" and speaking in those terms, as well as considering that subsection (5) allows appeals only from denials of the referenced summary-judgment motion). The Second Dictum thus reflects a view that the Legislature intended two things for each subsection of section 51.014(a): (1) that the sentence's common subject ("person") be limited only to those who have a justiciable interest to appeal the ruling described in the particular subsection and (2) that those who have a justiciable interest to appeal the ruling described in the particular subsection be limited to those who are named or necessarily implied within that subsection. *See id.*

## D. Why I Believe that the Dicta in *Koseoglu* Should Be Revisited

There are three reasons why I believe that the First Dictum of *Koseoglu* correct-

---

**2.** *See, e.g., Harris County Toll Rd. Auth. v. Southwestern Bell Tel., L.P.,* No. 01–05–00668–CV, 263 S.W.3d 48, 53, 2006 WL 2641204, at *2 (Tex.App.-Houston [1st Dist.] Sept. 14, 2006, pet. granted); *see also* Tex. R. App. P. 2, 25.1(b), 26.3.

**3.** *See, e.g., Valley Baptist Med. Ctr. v. Gonzalez,* 33 S.W.3d 821, 822 (Tex.2000).

**4.** *See, e.g., In re H.M.M.,* 230 S.W.3d 204, 205 (Tex.App.-Houston [14th Dist.] 2006, no pet.).

**5.** *See, e.g., Stary v. DeBord,* 967 S.W.2d 352, 352–53 (Tex.1998).

ly interprets section 51.014(a)(5) and that the Second Dictum does not. First, as explained above, the First Dictum comports with section 51.014(a)'s grammatical structure.

Second, under the Second Dictum of *Koseoglu,* the common subject "person" could mean different things depending on the subsection with which it is being read. In my view, it is doubtful that the Legislature intended for the common subject of section 51.014(a) to mean different things when applied to different subsections of the same section.

Third, implicit in the Second Dictum's merging the concepts of standing to appeal and the statutory right to appeal is the view that the Legislature, in section 51.014(a), intended to declare who has a justiciable interest to challenge certain orders on appeal—in every case and under any possible set of facts. The purpose of section 51.014(a) is not to do this; rather, its purpose is to provide what orders may be appealed interlocutorily. *Cf. Bally Total Fitness Corp. v. Jackson,* 53 S.W.3d 352, 365 (Tex.2001) ("The purpose of section 51.014(a)(3) of the Texas Civil Practice and Remedies Code, which allows interlocutory appeals of certain class-certification rulings, is to ensure that the costly process of a class action, with its attendant potential for irremediable harm to a defendant, does not proceed when there is no basis for certifying a class."). I glean this purpose from the fact that the Legislature (1) employed the very broad term "person" to describe who can appeal the orders listed in section 51.014(a)'s subsections; (2) structured the overall section so that, grammatically, the term "person" is not limited by anything; and (3) focused each subsection on a particular type of order that can be appealed interlocutorily. Reading section 51.014(a)'s plain language, I simply see no intent by the Legislature to decree which entities have a justiciable interest in appealing the listed orders.

And although the concepts of standing to appeal and the statutory right to appeal often overlap, this is not always the case, as they truly are independent concepts. Here, for example, Baylor (which was a party below before non-suit) asserts that it has a justiciable interest in pursuing an appeal of the denial of its summary-judgment motions based on the immunity from individual liability of Dr. Klein, its employee, because Baylor (1) could be liable under a respondeat superior theory if the non-suit is invalid and (2) may eventually have to indemnify Dr. Klein under statute even if the non-suit is valid.[6] The majority correctly does not reach the merits of these standing arguments in its opinion, and I likewise do not reach them here. But I note that if Baylor is correct that it has standing, in the abstract, to contest a

6. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 104.001–.009 (Vernon 2005); TEX. HEALTH & SAFETY CODE ANN. § 312.007(a) (Vernon 2001); *see also Baylor Coll. of Med. v. Hernandez,* 208 S.W.3d 4, 10–11 (Tex.App.-Houston [14th Dist.] 2006, pet. denied) (reasoning, under section 51.014(a)(5), that although immunity from individual liability necessarily applies only to individuals, "an agency or institution may be shielded from respondeat superior liability for its employee's negligence if the employee possesses" such immunity from liability, so that "a motion for summary judg-

ment by the employer of the putative official may be 'based on an assertion' of" individual immunity from liability "for the purposes of determining whether an interlocutory appeal is available, even though the employer may not qualify for" individual immunity from liability); *see also Baylor Coll. of Med. v. Tate,* 77 S.W.3d 467, 470–71 (Tex.App.–Houston [1st Dist.] 2002, no pet.) (indicating in dictum that Baylor could have invoked appellate jurisdiction under section 51.014(a)(5) had its doctors moved for summary judgment on basis of official immunity and had plaintiffs alleged vicarious liability against Baylor).

judgment rendered against its employee in his individual capacity, then a problem arises in interpreting section 51.014(a)(5)— as the Second Dictum of *Koseoglu* does— so that the only entity with standing to appeal is the one named in that subsection, *i.e.*, the individual employee. A more reasonable interpretation is that the Legislature employed the very broad term "person" as section 51.014(a)'s common subject exactly because the Legislature did *not* wish to determine who has standing to appeal the designated rulings—so that the statute's focus would not be on who had a justiciable interest in appealing a ruling, but would instead be on what rulings could be appealed.

### E.   Why I Nonetheless Agree with the Majority's Disposition

"Dictum is not binding as precedent under stare decisis." *Edwards v. Kaye*, 9 S.W.3d 310, 314 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). Nonetheless, "there is an exception to the precedential value of dictum depending on how it is classified, obiter dictum or judicial dictum." *Id.* "Judicial dictum, a statement by the supreme court made very deliberately after mature consideration and for future guidance in the conduct of litigation, is 'at least persuasive and should be followed unless found to be erroneous.'" *Id.* (quoting *Palestine Contractors, Inc. v. Perkins*, 386 S.W.2d 764, 773 (Tex.1964)). Were the Second Dictum of *Koseoglu* merely obiter dictum, I would dissent from the majority's holding based on it, arguing that our holding on rehearing should comport with *Koseoglu's* First Dictum, as did the relevant holding in our original opinion.

However, I conclude that the Second Dictum from *Koseoglu* is judicial dictum that best predicts the supreme court's interpretation of section 51.014(a), generally,

and of subsection 51.014(a)(5), specifically. I reach this conclusion because the *Koseoglu* court used similar reasoning to support its actual holding concerning section 51.014(a)(8):

> Section 51.014(a)(8) differs from Section [ ] 51.014(a)(5) . . . because, by its plain language allowing for interlocutory appeals of orders granting or denying pleas to the jurisdiction, it cannot be read as applying solely to a governmental unit, the entity which it describes. Interpreting "governmental unit" to modify the term "persons," as Koseoglu would have us do, would preclude an aggrieved plaintiff, who is plainly not a governmental unit, from bringing an interlocutory appeal to challenge the grant of a jurisdictional plea. This would be inconsistent with the express language of Section 51.014(a)(8). It would be irrational for the Legislature to have intended that a governmental unit be the only "person" who may appeal from an interlocutory order because a governmental unit would have no reason to appeal the grant of a plea to the jurisdiction. For the entire phrase "grants or denies" to be given effect, the statute must allow an appeal to be filed by both a non-governmental plaintiff challenging the grant of a plea to the jurisdiction and a governmental defendant challenging the denial of one.

*Koseoglu*, 233 S.W.3d at 843. This reasoning views descriptive words within a subsection to modify not only the sentence's prepositional object ("order"), but also, in effect, to modify the sentence's subject ("person"). Put another way, the reasoning restricts the meaning of "person" (the "who" who may appeal) based on terms that modify "order" (the "what" that may be appealed). And without expressly saying so, the subsection-(8) reasoning, by focusing on the phrase "grants or denies," also blends together the distinct concepts

of who has a justiciable interest in appealing the referenced ruling and whom the statute authorizes to appeal. Accordingly, this reasoning falls in line with the Second Dictum in *Koseoglu* concerning section 51.014(a)(5). For this reason, I view the Second Dictum as judicial dictum, not mere obiter dictum. I thus further agree that we must follow it.[7] *See Edwards*, 9 S.W.3d at 314.

For the reasons set out above, however, I respectfully request that the Texas Supreme Court revisit its dicta concerning section 51.014(a)(5), and the equivalent reasoning supporting its holding under section 51.014(a)(8), from *Koseoglu*.

### Dr. Klein's Appeal

I also respectfully concur in that portion of the judgment that dismisses Dr. Klein's appeal. I do so because I do not read Texas Health and Safety Code section 312.007(a) or Texas Civil Practice and Remedies Code section 51.014(a)(5) as narrowly as the majority does. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(5); TEX. HEALTH & SAFETY CODE ANN. § 312.007(a) (Vernon 2001).

### A. What Section 51.014(a)(5)'s Requirements Are

Texas Civil Practice and Remedies Code section 51.014(a)(5) has two requirements for appellate jurisdiction to attach: (1) that the denied summary-judgment motion be "based on an assertion of immunity" by an individual and (2) that that individual be "an officer or employee of the state or a political subdivision of the state." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(5). If either of these requirements is missing, we lack jurisdiction over the interlocutory appeal.

### B. In What Circumstances a Private–Supported–Medical–School Employee Can Meet Section 51.014(a)(5)'s Requirements for Interlocutory Appeal

A private-supported-medical school is obviously not the "state or a political subdivision of the state." Accordingly, the employee of such a private school cannot *actually* be an employee of the state or its political subdivision. Normally, one who is not actually a state employee cannot assert an immunity defense to his personal liability. *See, e.g., Univ. of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex.2000) ("Official immunity is an affirmative defense *that protects government employees* from personal liability.") (emphasis added). But to my mind, if a separate statutory provision requires that a private-supported-medical-school employee be treated *as if he were* a governmental employee in certain circumstances, and if those circumstances exist in a given case, then the employee may be treated as if he were a governmental employee in that case. I view Texas Health

---

7. I recognize that we need not follow judicial dictum if it is erroneous. *See Edwards v. Kaye*, 9 S.W.3d 310, 314 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) (quoting *Palestine Contractors, Inc. v. Perkins*, 386 S.W.2d 764, 773 (Tex.1964)). Respectfully, for the reasons set out above, I believe that the Second Dictum incorrectly interprets section 51.014(a)(5). I nonetheless believe that we must follow the Second Dictum because (1) the *Koseoglu* court used similar reasoning to support its actual holding, indicating that it would interpret all subsections of section 51.014(a) likewise, and (2) the issue is not so clear-cut as to justify doing otherwise (witness that we, too, incorrectly employed reasoning like that of the Second Dictum to hold on original submission that we lacked jurisdiction under section 51.014(a)(8) over Dr. Klein's appeal, *see Klein v. Hernandez*, No. 01–06–00569–CV, 2007 WL 2264539, at *11 (Tex.App.-Houston [1st Dist.] Aug. 3, 2007), *withdrawn*, No. 01–06–00569–CV 260 S.W.3d 1, 2008 WL 1747479 (Tex.App.-Houston [1st Dist.] Apr. 17, 2008, no pet. h.)).

and Safety Code section 312.007(a) as a statute falling into this category. Specifically, I read section 312.007(a) to allow such a private employee to invoke legal principles or defenses that are available only to governmental employees (such as the affirmative defense of official immunity from liability) for the purpose of determining his liability in a given case. It flows naturally from this reading that if the "governmental" legal principle or affirmative defense that the private employee invokes is based on immunity from individual liability (such as the affirmative defense of official immunity from liability), he should be able to appeal the denial of a summary-judgment motion based on that legal principle or affirmative defense under section 51.014(a)(5). *See, e.g., Koseoglu,* 233 S.W.3d at 841 ("Had [the governmental official] filed a motion for summary judgment based on an assertion of official immunity, he clearly would be permitted under Section 51.014(a)(5) to appeal an interlocutory denial of his motion for summary judgment."); *see also Baylor Coll of Med. v. Hernandez,* 208 S.W.3d 4, 10 (Tex. App.-Houston [14th Dist.] 2006, pet. denied).

Section 312.007(a) is part of Texas Health and Safety Code chapter 312, which expressly requires that private-supported-medical schools be considered governmental units for limited purposes. One of those limited purposes, found in section 312.007, involves claims against the employees (or directors, trustees, officers, interns, residents, fellows, faculty members, or other associated health care profession-als) of supported-medical schools in their individual capacity:

### § 312.007. *Individual* Liability

(a) A ... supported medical ... school ... is a state agency, and [an] ... employee of a ... supported medical ... school ... is an employee of a state agency *for purposes of Chapter 104, Civil Practice and Remedies Code, and for purposes of determining the liability, if any, of the person for the person's acts or omissions while engaged in the coordinated or cooperative activities of the ... school ....*

(b) A judgment in an action or settlement of a claim against a ... supported medical ... school ... under Chapter 101, Civil Practice and Remedies Code, *bars any action* involving the same subject matter by the claimant against [an] ... employee of the ... school ... whose act or omission gave rise to the claim *as if the person were an employee of a governmental unit against which the claim was asserted as provided under Section 101.106, Civil Practice and Remedies Code.*

TEX. HEALTH & SAFETY CODE ANN. § 312.007 (Vernon 2001) (emphasis added).

There are thus three situations in which section 312.007 treats a private-supported-medical school's employee (or its director, trustee, officer, intern, resident, fellow, faculty member, or other associated health care professional) as if he were an employee of a governmental unit:

1.  when certain situations that could allow for indemnification of the employee exist;[8]

---

**8.** *See* TEX. HEALTH & SAFETY CODE ANN. § 312.007(a) ("A ... supported medical ... school ... is a state agency, and [an] ... employee of a ... supported medical ... school ... is an employee of a state *agency for purposes of Chapter 104, Civil Practice and Remedies Code ....*") (emphasis added). Tex-

as Civil Practice and Remedies Code chapter 104—entitled, "State Liability for Conduct of Public Servants"—provides the circumstances under which the State must indemnify its employees, former employees, and certain individuals under contract with or in the service of particular state entities for damages, court

2. when determining whether the employee could be individually liable for his acts or omissions occurring during certain types of the school's activities;[9] and

3. when a judgment is rendered or a settlement is made against the employer-school, in which case any action against the employee involving the same subject matter is barred.[10]

The second benefit of section 312.007—created by the phrase "[an] . . . employee of a . . . supported medical . . . school . . . is an employee of a state agency . . . for purposes of determining the liability, if any, of the person for the person's acts or omissions" in section 312.007(a)—is the relevant one for purposes of this appeal. The majority reads this second benefit of section 312.007(a) as a "grant of limited liability,"[11] without further explanation. That is, the majority reads this provision of section 312.007(a) to treat private-supported-medical-school employees as if they were governmental employees solely for the purpose of granting them a damages cap that might be available to governmental employees. For this reason, the majority concludes that whatever section 312.007(a)'s second benefit confers, that

benefit cannot be "based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state," as required for us to have jurisdiction under section 51.014(a)(5).

I do not disagree that the second benefit of section 312.007(a) could theoretically encompass a limitation on liability (such as a damages cap), if it applies in a given case and if that benefit would be available to a governmental employee in the particular circumstances. What I disagree with is the majority's position that section 312.007(a)'s second benefit *is restricted solely to* a damages cap. It is for this reason that I cannot join the majority's reasoning.

In contrast to the majority, I read the second benefit of section 312.007(a) more broadly, to extend to certain employees and personnel of private-supported-medical schools the potential ability to invoke legal principles (*e.g.*, rules of law, affirmative defenses) that a governmental employee could invoke to preclude or to limit individual liability that he might otherwise incur for carrying out certain types of his employer's activities. The language of

---

costs, and attorney's fees. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 104.001–.009.

9. *See* Tex. Health & Safety Code Ann. § 312.007(a) ("A . . . supported medical . . . school . . . is a state agency, and [an] . . . employee of a . . . supported medical . . . school . . . is an employee of a state agency . . . *for purposes of determining the liability, if any, of the person for the person's acts or omissions while engaged in the coordinated or cooperative activities of the . . . school . . . .*").

10. *See id.* § 312.007(b) (Vernon 2001) ("A judgment in an action or settlement of a claim against a . . . supported medical . . . school . . . under Chapter 101, Civil Practice and Remedies Code, *bars any action* involving the same subject matter by the claimant against [an] . . . employee of the . . . school . . . whose act or omission gave rise to the claim *as if the*

*person were an employee of a governmental unit against which the claim was asserted as provided under Section 101.106, Civil Practice and Remedies Code.").* The version of section 101.106 that applies to this case reads likewise. *See* Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex. Gen. Laws 3242, 3305, *amended by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 11.05, 2003 Tex. Gen. Laws 847, 886.

11. The majority does not state exactly what is meant by "limited liability," but I am assuming that at least a damages cap is meant. *Cf.* Tex. Health & Safety Code Ann. § 312.006(a) (Vernon 2001) (entitled "Limitation on Liability" and importing Texas Tort Claims Act's damages cap for supported medical schools).

section 312.007(a)'s second benefit supports this broader interpretation. Specifically, this provision speaks in terms of *"determining the liability,* if any, of the person for the person's acts or omissions...." *Id.* (emphasis added). "Determining" an individual's liability for his acts or omissions is a process, an adjudication. *See* RANDOM HOUSE WEBSTER'S UNABRIDGED DICT. at 542 (2d ed.2001) (defining "determine" as "to settle or decide ... by an authoritative or conclusive decision" and "to conclude or ascertain, as after reasoning, observation, etc."); *id.* at 541 (defining "determination" as "the act of coming to a decision or of affixing or settling a purpose" and "ascertainment, as after observation or investigation"). That process is broad enough to encompass the adjudication of, for example, an affirmative defense to the individual's liability. "Determining the liability" of the individual must thus be more than merely placing a cap on damages that can be awarded against that individual, as the majority reads the phrase.

The narrowness and specificity of other provisions of chapter 312 also demonstrate that the phrase "[an] ... employee of a ... supported medical ... school ... is an employee of a state agency ... for purposes of determining the liability, if any, of the person for the person's acts or omissions" was intended to be more than simply a damages cap. For example, section 312.006(a), in which the Legislature grants the private-supported-medical school the damages cap available to a governmental unit, employs words far more specific than those used to describe the second benefit of section 312.007(a).[12] And when the Legislature intended to provide employees of private-supported-medical schools with the indemnity[13] or with the bar to suit[14] available to governmental employees, it did so with specific language and with references to specific provisions of other statutes. In contrast, the phrase "[an] ... employee of a ... supported medical ... school ... is an employee of a state agency ... for purposes of determining the liability, if any, of the person for the person's acts or

**12.** § 312.006. *Limitation on Liability*

> (a) A ... supported medical ... school ... engaged in coordinated or cooperative medical ... clinical education under Section 312.004, including patient care and the provision or performance of health or dental services or research at a public hospital, *is not liable* for its acts and omissions in connection with those activities *except to the extent and up to the maximum amount of liability of state government under Section 101.023(a), Civil Practice and Remedies Code,* for the acts and omissions of a governmental unit of state government under Chapter 101, Civil Practice and Remedies Code....

TEX. HEALTH & SAFETY CODE ANN. § 312.006(a) (emphasis added); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 101.023(a) (Vernon 2005) ("Liability of the state government under this chapter is limited to money damages [in certain amounts]."); *Baylor Coll. of Med. v. Hernandez,* 208 S.W.3d 4, 11 (Tex.App.-Houston [14th Dist.] 2006, pet. denied) (in-

terpreting section 312.006(a) as importing damages cap).

**13.** *See* TEX. HEALTH & SAFETY CODE ANN. § 312.007(a) ("A ... supported medical ... school ... is a state agency, and [an] ... employee of a ... supported medical ... school ... is an employee of a state agency for purposes of Chapter 104, Civil Practice and Remedies Code....").

**14.** *See* TEX. HEALTH & SAFETY CODE ANN. § 312.007(b) ("A judgment in an action or settlement of a claim against a ... supported medical ... school ... under Chapter 101, Civil Practice and Remedies Code, bars any action involving the same subject matter by the claimant against [an] ... employee of the ... school ... whose act or omission gave rise to the claim as if the person were an employee of a governmental unit against which the claim was asserted as provided under Section 101.106, Civil Practice and Remedies Code.").

omissions" is worded generally, not with the kind of specificity found in the other provisions of chapter 312 cited above. In sum, the Legislature knew how to limit the "governmental" benefits that it was granting private-supported-medical schools and their employees, but chose not to use such limiting language when it provided that private-supported-medical-school employees were to be treated as governmental employees "[f]or purposes of determining the liability, if any, of the person for the person's acts or omissions" under specified circumstances.

For all of these reasons, I conclude that when a private-supported-medical-school employee is sued in his individual capacity for his acts or omissions while engaged in certain of the school's activities, he may invoke the affirmative defense of official immunity from liability, if the facts of the case allow it. *See* Tex. Health & Safety Code Ann. § 312.007(a). If the private-supported-medical-school employee wishes to invoke this affirmative defense, he may use a summary-judgment motion to do so. *See Koseoglu*, 233 S.W.3d at 843 ("[A]n official sued in his individual capacity would assert official immunity as a defense to personal monetary liability, which is well suited for resolution in a motion for summary judgment."). If that summary-judgment motion is denied, he may appeal the ruling under section 51.014(a)(5). *See id.* at 841; *Hernandez*, 208 S.W.3d at 10. The reason that he may appeal that ruling under section 51.014(a)(5) is one of simple logic: if he is to be treated as if he were a governmental employee for purposes of a summary-judgment ground based on official immunity from individual liability, he should also be treated as if he were a governmental employee for the purpose of appealing that very ruling. That is, it would be incongruous not to allow him to appeal, on the basis that he was not *actually* a governmental employee, the very

summary-judgment ruling for which the law required that he be treated below *as if he were* one.

The majority implies that, had the Legislature intended for section 312.007(a) to allow a private-supported-medical-school employee to invoke the affirmative defense of official immunity from liability, it could have used the words "immunity from liability" in that section. Yes, the Legislature could have used the words "immunity from liability," rather than implicitly having included, by logical necessity, the potential to invoke an affirmative defense based on that immunity. But the absence of the word "immunity" does not render the Legislature's intent unclear. Indeed, the supreme court itself has interpreted a statute not expressly containing the term "immunity from liability" to grant such immunity, so that a summary-judgment ruling issued pursuant to it is subject to appeal under section 51.014(a)(5). *See Newman v. Obersteller*, 960 S.W.2d 621, 622–23 (Tex.1997). Of course, *Newman* also demonstrates that section 51.014(a)(5)'s failure to reference section 312.007, and section 312.007's failure to state that orders based on it are appealable, are not necessarily dispositive matters. *See id.* at 622 (holding that denial of summary-judgment motion invoking statutory bar of former Texas Civil Practice and Remedies Code section 101.106 was appealable under section 51.014(a)(5), despite fact that section 51.014(a) did not list rulings based on former section 101.106 as appealable and fact that former section 101.106 did not state that orders based on it were appealable).

## C. Why I Concur, Rather Than Dissent

I concur in, rather than dissent from, the judgment dismissing Dr. Klein's appeal because I do not interpret Dr. Klein's summary-judgment motions as having asserted any legal principle or affirmative defense

that might have been available to a governmental employee under the facts of this case.

Baylor's and Dr. Klein's summary-judgment motions asserted summarily that Dr. Klein had "official immunity in this case," which Hernandez apparently understood as an assertion of official immunity from liability because she responded to that affirmative defense on the merits. However, Baylor and Dr. Klein's later summary-judgment reply clarified that they were not asserting common-law official immunity from liability. Their summary-judgment reply was consistent with the overall gist of their summary-judgment motions, which was to argue that Texas Health and Safety Code sections 312.006 and 312.007 cloaked them both with the immunity from suit and liability allegedly granted by the Texas Tort Claims Act.[15] Moreover, Baylor and Dr. Klein never in any way attempted to prove the elements of common-law official immunity from liability.

Summary-judgment motions are to be strictly construed in substantive matters against the movant. *See Nexen, Inc. v. Gulf Interstate Eng'g Co.*, 224 S.W.3d 412, 423 n. 14 (Tex.App.-Houston [1st Dist.] 2006, no pet.). Under this standard, I do not interpret Baylor's and Dr. Klein's summary-judgment motions to have asserted Dr. Klein's official immunity from liability, although I believe that section 312.007(a) gave him the ability to invoke that affirmative defense. *See Hernandez*, 208 S.W.3d at 11 (interpreting Baylor's and its physicians' summary-judgment motion not to raise ground of official immunity from liability, so that the order denying the motion was not appealable under Texas Civil

Practice and Remedies · Code section 51.014(a)(5), when movants (1) "d[id] not claim official immunity" in their motion; (2) did not allege or offer evidence on elements of official immunity; and (3) cited only section 312.006(a), which by its terms could not apply to individuals). Because Dr. Klein's summary-judgment motions did not assert official immunity from liability,[16] the trial court's order was not one denying "a motion for summary judgment that is based on an assertion of immunity by an individual" who could be treated, under section 312.007(a), as "an officer or employee of the state or a political subdivision of the state." Accordingly, I concur in the conclusion that we lack subject-matter jurisdiction over Dr. Klein's appeal.

### Conclusion

With these comments, I concur in the judgment.

---

**15.** *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 101.001–.029 (Vernon 2005 & Supp.2007).

**16.** Baylor's and Dr. Klein's summary-judgment motions relied on Texas Civil Practice and Remedies Code sections 101.021 and 101.101 of the Texas Tort Claims Act, which apply only to a governmental unit, not to an individual sued in his individual capacity, as was Dr. Klein. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 101.021, 101.101 (Vernon 2005).