Geffrey KLEIN, M.D. and Baylor
College of Medicine,
Petitioners,

v.

Cynthia HERNANDEZ, as the Parent
and Next Friend of N.H., a
Minor, Respondent.

No. 08–0453.

Supreme Court of Texas.

Argued Oct. 7, 2009.

Decided May 7, 2010.

Kendall M. Gray, Cameron Phair Pope, Jeffrey B. McClure, Laura M. Trenaman, Elizabeth A. Wiley, Andrews & Kurth, L.L.P., Marion Woodrow Kruse Jr., Alicia T. Freed, Kruse Law Firm, P.C., Houston TX, for Geffrey Klein, M.D.

Robert J. Talaska, Theodore G. Skarbowski, Timothy Lyle Culberson, The Talaska Law Firm, P.L.L.C., Houston, TX, for Respondent.

Cameron Phair Pope, Kendall M. Gray, Andrews & Kurth, L.L.P., Houston, TX, for Baylor College of Medicine.

Justice MEDINA delivered the opinion of the Court.

By statute, a state employee may appeal an interlocutory order denying a motion for summary judgment based on an assertion of immunity. TEX. CIV. PRAC. & REM. CODE § 51.014(5). The issue here is whether a resident physician, working at a public hospital under an agreement with his private medical school, may take an interlocutory appeal under this statute. The court of appeals decided he could not, dismissing the interlocutory appeal because the resident physician was not a state employee. 260 S.W.3d 1, 10–11. We conclude, however, that by statute a resident physician at a private medical school is to be treated like a state employee for purposes of section 51.014(5) when the underlying litigation arises from a residency program coordinated through a supported medical school at a public hospital. Accordingly, we reverse the court of appeals' judgment, reinstate the physician's interlocutory appeal, and remand the case to the court of appeals for its review.

## I

Cynthia Hernandez sued Dr. Geffrey Klein and Baylor College of Medicine, alleging malpractice during the delivery of her daughter at Ben Taub General Hospital. Ben Taub is a part of the Harris County Hospital District, a political subdivision of the State. See TEX. HEALTH & SAFETY CODE § 281.002(a); see also TEX. CONST. art. IX, § 4. Baylor is a private, non-profit medical school, but is also a "supported medical school," which means that it has contracts with the Texas Higher Education Coordinating Board and receives state funding specifically allocated for training physicians who provide medical care at public hospitals such as Ben Taub. TEX. HEALTH & SAFETY CODE § 312.002(6). Dr. Klein was a Baylor obstetrics and gynecology resident at Ben Taub under this arrangement when he delivered Hernandez's daughter in 1994.

Responding to Hernandez's claims, Baylor and Klein jointly filed a motion to dismiss for lack of jurisdiction and a motion for summary judgment, asserting they were entitled to immunity under sections 312.006 and 312.007 of the Texas Health and Safety Code. Hernandez responded to the motions, but also non-suited her claim against Baylor. Despite the non-suit, the trial court denied the motions as to both defendants, and Baylor joined Klein in appealing the trial court's interlocutory order.

The court of appeals dismissed both appeals. 260 S.W.3d 1. The court held it lacked jurisdiction to consider the interlocutory appeals under either section 51.014(a)(5) or (a)(8) of the Civil Practice and Remedies Code. Id. at 7–11. Section 51.014(a)(5) allows an interlocutory appeal from the denial of "a motion for summary

judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state," while section 51.014(a)(8) authorizes an interlocutory appeal from the grant or denial of "a plea to the jurisdiction by a governmental unit." TEX. CIV. PRAC. & REM.CODE § 51.014(a)(5), (8). The court reasoned that it lacked jurisdiction under (a)(5) because Klein was not an "officer or employee of the state," and under (a)(8) because Baylor was not a "governmental unit." 260 S.W.3d at 7–11. The court also concluded that Chapter 312 of the Texas Health and Safety Code did not confer immunity upon either Baylor or Klein. *Id.* at 8, 10.

## II

Because this is an interlocutory appeal, we first consider the matter of our own jurisdiction. Interlocutory appeals are generally final in the courts of appeals, TEX. GOV'T CODE § 22.225(b)(3), although exceptions to this general rule exist. *See* TEX. GOV'T CODE § 22.001(a)(1)-(2), (c), (d); *see also Univ. of Tex. Sw. Med. Ctr. of Dallas v. Margulis*, 11 S.W.3d 186, 187 (Tex.2000) (per curiam). One exception is when a court of appeals' decision conflicts with another court of appeals's prior decision. TEX. GOV'T CODE § 22.001(a)(2). That exception applies here as the court acknowledged that its decision regarding Klein conflicted with the Fourteenth Court of Appeals's decision in *Young v. Villegas*, 231 S.W.3d 1 (Tex.App.-Houston [14th Dist.] 2007, pet. denied). *See* 260 S.W.3d at 9–11 (disagreeing with the conclusion in *Young* that "a Baylor doctor, who was similarly situated to Dr. Klein in the instant case," was authorized by section 51.014(5) "to appeal the denial of his summary judgment motion, in which he asserted immunity from individual liability").

 We also have jurisdiction over this appeal because the court of appeals declined to exercise its interlocutory-appellate jurisdiction. *See Lewis v. Funderburk*, 253 S.W.3d 204, 206 (Tex.2008). Even though we may lack jurisdiction over the substance of an appeal, we always have jurisdiction to determine whether the court of appeals correctly applied its jurisdiction. *Badiga v. Lopez*, 274 S.W.3d 681, 682 n. 1 (Tex.2009); *Del Valle Indep. Sch. Dist. v. Lopez*, 845 S.W.2d 808, 809 (Tex. 1992) (citing *Long v. Humble Oil & Ref. Co.*, 380 S.W.2d 554, 555 (Tex.1964) (per curiam)).

## III

 As another preliminary matter, we note the parties' agreement here that Hernandez's non-suit left no case or controversy as to Baylor. As a general rule, a plaintiff may voluntarily dismiss a case— take a non-suit—at any time before all of the plaintiff's evidence other than rebuttal evidence has been introduced. TEX.R. CIV. P. 162. When this occurs, the non-suit typically moots the case or controversy from the moment of its filing or pronouncement in open court. *Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon*, 195 S.W.3d 98, 100 (Tex.2006) (per curiam). Exceptions exist, such as when the defendant has asserted a claim for affirmative relief, *see Gen. Land Office of State of Tex. v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 570 (Tex.1990), but Baylor submits it had no such claim in the trial court.

Appellate courts are prohibited from deciding moot controversies because the separation-of-powers article prohibits advisory opinions on abstract questions of law. TEX. CONST. art. II, § 1; *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 164 (Tex. 2004). Assuming the non-suit in the trial court ended the case against Baylor, as the parties apparently agree, there was no live controversy for the court of appeals to

decide. But the court of appeals did not dismiss Baylor's appeal because the case was moot, but rather reasoned that Baylor was not entitled to an interlocutory appeal because it was not a "governmental unit." *See* 260 S.W.3d at 7–8 (holding that the Health and Safety Code does not make Baylor a "governmental unit" entitled to interlocutory appeal). Baylor therefore asks us to declare the part of the court of appeals's opinion pertaining to it void as an advisory opinion. Hernandez, on the other hand, argues that the court of appeals's judgment is correct whether based on Baylor's failure to meet the requirements for an interlocutory appeal or due to the absence of a live controversy between the parties. Under either circumstance, the correct action is to dismiss Baylor's appeal, which is what the court of appeals has done.

■ When a plaintiff is entitled to a non-suit, the trial court's dismissal order is ministerial. *Hooks v. Fourth Court of Appeals*, 808 S.W.2d 56, 59 (Tex.1991). Before the motions hearing in this case, the trial court acknowledged its understanding of this, observing that the non-suit had taken Baylor out of the case. Its subsequent order, however, purported to deny both Klein's and Baylor's motions. This may have been inadvertent, but even if the trial court changed its mind about Baylor's status in the case, the determination is no basis for an interlocutory appeal. That is, even if we assume the trial court's action here to be a refusal to comply with its ministerial duty to dismiss, no statute provides Baylor the right to an interlocutory appeal under these circumstances. Mandamus, we have said, is the appropriate remedy when a trial court refuses to comply with its ministerial duty to dismiss after a non-suit. *Id.*

While we do not necessarily agree with the court of appeals's reasons for dismissing Baylor's appeal, we agree with its judgment. The court did not err in dismissing Baylor's appeal and that part of its judgment is accordingly affirmed. The viability of Klein's interlocutory appeal, however, remains in dispute because Hernandez has not similarly dismissed her claim against him.

## IV

■ Klein asserts a right to an interlocutory appeal under section 51.014(a)(5) of the Civil Practice and Remedies Code. That section provides for the appeal of an order that "denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state." Tex. Civ. Prac. & Rem.Code § 51.014(a)(5). The order here unquestionably meets some of the statutory requirements: (1) the summary judgment motion is based on an individual's assertion of immunity, and (2) the trial court's order denies the motion. The requirement in dispute concerns the status of the movant; that is, whether this individual, who is a resident physician at a supported medical school, is also a state employee for purposes of the statute.

Klein contends that section 312.007(a) of the Texas Health and Safety Code classifies him as a state employee for purposes of his work at Ben Taub. The section, entitled "Individual Liability," provides:

A medical and dental unit, **supported medical** or dental **school,** or coordinating entity **is a state agency, and a** director, trustee, officer, intern, **resident,** fellow, faculty member, or other associated health care professional or employee **of a** medical and dental unit, **supported medical** or dental **school,** or coordinating entity **is an employee of a state agency for purposes of Chapter 104, Civil Practice and Remedies**

Code, and for purposes of determining the liability, if any, of the person for the person's acts or omissions while engaged in the coordinated or cooperative activities of the **unit, school,** or **entity.**

TEX. HEALTH & SAFETY CODE § 312.007(a) (emphasis added). Under this section, a supported medical school, like Baylor, "is a state agency," and a resident of a supported medical school, like Dr. Klein, "is an employee of a state agency" for two purposes: (1) obtaining indemnity under Chapter 104, Civil Practice and Remedies Code, which requires the state to indemnify employees in certain circumstances based on acts or omissions in the course and scope of employment, and (2) determining liability, if any, for acts or omissions while engaged in the coordinated or cooperative activities of a supported medical school. Because Klein "is an employee of a state agency" for purposes of determining his liability in the underlying suit, he submits that he is a state employee for purposes of this litigation, which includes the right to an interlocutory appeal under section 51.014(a)(5).

The court of appeals, however, disagreed. It concluded Klein was not entitled to the same rights as an "actual" employee of a state agency. 260 S.W.3d at 9–11. More particularly, the court reasoned that the Legislature did not intend to extend sovereign or official immunity, or any attendant rights and benefits associated with such immunity, to a resident of a supported medical school by merely casting the resident as "an employee of a state agency" for purposes of determining liability. *Id.* at 10–11 (discussing TEX. HEALTH & SAFETY CODE § 312.007(a)). The court's analysis of the preceding provision, section 312.006(a), informed its understanding of section 312.007(a).

Section 312.006(a), entitled "Limitation on Liability," states that a supported medical school engaged in coordinated or cooperative medical education, including patient care at a public hospital,

is not liable for its acts and omissions in connection with those activities except to the extent and up to the maximum amount of liability of state government under Section 101.023(a), Civil Practice and Remedies Code, for the acts and omissions of a governmental unit of state government under Chapter 101, Civil Practice and Remedies Code.

*Id.* § 312.006(a). By its specific reference to section 101.023(a), the court inferred that the Legislature intended only to limit a supported medical school's liability to the damages caps in the Texas Tort Claims Act. 260 S.W.3d at 5–6 (quoting TEX. CIV. PRAC. & REM.CODE § 101.023(a) which limits liability under the Tort Claims Act). Extending that inference to section 312.007(a) as well, the court reasoned that the Legislature intended to make Baylor a state agency and its residents state employees only to the extent of the Tort Claims Act's damages cap provision, specifically mentioned in 312.006(a), and Chapter 104's indemnity provisions, specifically mentioned in 312.007(a). *Id.* at 6–8.

Klein asserts that the court misinterprets these provisions. He submits there are three parts to section 312.006(a): (1) a grant of immunity ("is not liable"), (2) a limited waiver for certain acts ("except to the extent . . . of a governmental unit of state government [under the Tort Claims Act]"), and (3) a limitation on damages for those acts ("except . . . up to the maximum amount of liability of state government [under the Tort Claims Act]"). He complains that the court of appeals's analysis only accounts for the last part, ignoring the rest. We agree that the court of appeals reads these provisions too narrowly.

■ The cardinal rule of statutory construction is to ascertain and give effect to the Legislature's intent. *Leland v. Brandal*, 257 S.W.3d 204, 206 (Tex.2008). When determining that intent, the Code Construction Act further guides our analysis, listing a number of relevant factors including the object sought to be obtained by the legislation, the circumstances under which its was enacted, legislative history, and former statutory provisions on the same or similar subjects, among others. TEX. GOV'T CODE § 311.023.

The provisions at issue were first enacted in 1987. That year, the Seventieth Legislature amended Title 71 of the Revised Civil Statutes, which pertained to public health, by adding article 4494t, which related to coordinated medical and dental clinical education. Act of May 28, 1987, 70th Leg., R.S., ch. 219, 1987 Tex. Gen. Laws 1508–10. The Legislature concluded that the clinical education and patient care at public hospitals would benefit from coordination and cooperation rather than competition and that cooperation would enhance educational opportunities while conserving public resources. *Id.* at 1508. As further background, the senate bill analysis noted that Baylor College of Medicine and the University of Texas Health Science Center at Houston had preliminarily agreed to staff the Harris County Hospital District's expanding health care facilities and coordinate their education and research efforts, but that "residents, interns, faculty and other health care professionals at the Baylor College of Medicine, a private institution, [did] not have the same level of liability as UTHSCH, a state agency-owned school." Senate Comm. on Health and Human Services, Bill Analysis, S.B. 1062, 70th Leg., R.S. (1987). The analysis recited the intent to overcome this impediment by equalizing liability, noting that, among other purposes, the bill "establishes that liability of units, schools, and entities engaged in cooperative or coordinated activities and services is the same as state government liability for a governmental unit of state government." *Id.*

Two years later, the Legislature repealed article 4494t and recodified it as Chapter 312 of the Health and Safety Code. Act of June 14, 1989, 71st Leg., R.S., ch. 678, § 1, 1989 Tex. Gen. Laws 2230, 3165. The codification reorganized the original statute and retitled some of its provisions. For example, before codification, article 4494t contained a single liability section, providing:

> Sec. 6. LIABILITY. No coordinating entity, medical and dental unit, or supported medical or dental school engaged in coordinated or cooperative medical or dental clinical education, including patient care and the provision or performance of health or dental services or research at a public hospital, pursuant to Section 4 of this article, shall be liable to any person for its acts and omissions in connection therewith except to the extent and up to but not in excess of the maximum amount of the liability of the state government as specified in Subsection (a) of Section 101.023 of the Texas Tort Claims Act (Chapter 101, Civil Practice and Remedies Code), for the acts and omissions of a governmental unit of the state government as provided in the Texas Tort Claims Act (Chapter 101, Civil Practice and Remedies Code), whether or not such a unit, school, or entity is a "governmental unit" as therein defined. A judgment in an action or a settlement of a claim against any such unit, school, or entity thus permitted under the provisions of the Texas Tort Claims Act shall ban any action involving the same subject matter by the claimant against any director, trustee, officer, intern, resident, fellow, faculty

member, or other associated health care professional or employee of such unit, school, or entity whose act or omission gave rise to the claim, as if the person were an employee of a governmental unit against which such claim was asserted as provided in Section 101.106 of the Texas Tort Claims Act. All directors, trustees, officers, interns, residents, fellows, faculty, and other associated health care professionals and employees of the medical and dental unit, the supported medical or dental school, or the coordinating entity so engaged shall be deemed to be employees of a state agency, and said unit, school, or entity shall be deemed to be a "state agency" for purposes of Chapter 104, Civil Practice and Remedies Code, and for purposes of determining the liability, if any, of such persons for their acts and omissions while engaged in such coordinated or cooperative activities of the units, schools, or entities.

Act of May 28, 1987, 70th Leg., R.S., ch. 219, § 6, 1987 Tex. Gen. Laws 1509–10, *repealed by* Act of June 14, 1989, 71st Leg., R.S., ch. 678, § 1, 1989 Tex. Gen. Laws 2230, 3165. After codification, this liability section became sections 312.006 and 312.007 of the Texas Health and Safety Code and was retitled, "Limitation on Liability" and "Individual Liability," respectively. TEX. HEALTH & SAFETY CODE §§ 312.006–.007. This reorganization, however, did not affect any substantive changes. Act of June 14, 1989, 71st Leg., R.S., ch. 678, § 1.001(a), 1989 Tex. Gen. Laws 2230, 2236.

As before, Baylor remained a supported medical school. *See* TEX. HEALTH & SAFETY CODE § 312.002(6) (defining "supported medical or dental school"). As such, the Legislature has authorized Baylor to coordinate and cooperate with other medical or dental schools and contract to provide medical, dental, or other patient services

to public hospitals, the rationale being that such relationships will "(1) enhance the education of students, interns, residents and fellows attending [the schools]; (2) enhance patient care; and (3) avoid any waste of public money." *Id.* § 312.001(b); *see also id.* §§ 312.003–.004; § 312.002(5) (defining "public hospital"). Under this authorization, Baylor has contracted with the Texas Higher Education Coordinating Board and receives state funding for training physicians who provide medical care at public hospitals.

Ben Taub is one such public hospital, being a part of the Harris County Hospital District. This District, like all such countywide districts, is a political subdivision of the State authorized by the Legislature to "provide for the establishment of a hospital or hospital system to furnish medical aid and hospital care to indigent and needy persons residing in the district." *Id.* § 281.002(a). These districts and their hospitals are "governmental units" for purposes of the Tort Claims Act. TEX. CIV. PRAC. & REM.CODE § 101.001(3).

Here, Baylor and the University of Texas Medical School at Houston, through a coordinating entity called Affiliated Medical Services ("AMS"), have agreed to provide medical care and services, and medical education, training and research activities at Ben Taub and other public hospital facilities and clinics owned and operated by the Harris County Hospital District. The Commissioner of Health has approved this agreement between Baylor and UT regarding AMS, and the State Board of Medical Examiners has certified AMS as a non-profit corporation organized to benefit the public. Under the agreement, Baylor provides all obstetrical and gynecological medical care services at Ben Taub. That was the arrangement in 1994, when Hernandez's daughter

was delivered, and it remains the arrangement today.

Had Klein been directly employed by Ben Taub, he would be a governmental employee under the Tort Claims Act. Similarly, had the University of Texas Medical Branch or a similar public university provided Klein to the hospital, he would be a governmental employee under the Act. Instead, Baylor provided Klein's services to Ben Taub. This distinction, however, makes no difference under Chapter 312, which classifies Baylor as a "governmental unit of state government" and a "state agency" for certain purposes, including its services at Ben Taub. Tex. Health & Safety Code §§ 312.006(a)-.007(a).

In addition to making Baylor a "state agency" for certain purposes, including its services at Ben Taub, Chapter 312 also makes Klein a state employee for these same purposes. Tex. Health & Safety Code § 312.007(a). The chapter provides that a supported medical school like Baylor "is not liable for its acts or omissions" in connection with the provision or performance of these services:

> except to the extent and up to the maximum amount of liability of state government under Section 101.023(a), Civil Practice and Remedies Code, for the acts and omissions of a governmental unit of state government under Chapter 101, Civil Practice and Remedies Code.

*Id.* § 312.006(a).

Contrary to the court of appeals's reading, we construe "the extent" and "the maximum amount" of liability as referencing separate subjects. Thus, a supported medical school is not liable, except (1) to the extent of liability of state government for the acts and omissions of a governmental unit of state government under the Tort Claims Act, and (2) up to the maximum amount of liability of state government under Section 101.023(a) of the Act.

Section 312.006(b) confirms this reading, stating that "[t]he limitation on liability provided by this section applies regardless of whether" the supported medical school "is a 'governmental unit' as defined by section 101.001, Civil Practice and Remedies Code." *Id.* § 312.006(b). Thus, a supported medical school does not need to be a governmental unit—like UT Medical Branch—to be entitled to immunity; the Health and Safety Code bestows such status by its own terms.

We conclude that the Legislature intended through Chapter 312 to treat Baylor like other governmental entities providing services at public hospitals, extending the same protection and benefits to Baylor and its residents who work at these hospitals. In the words of the chapter, a supported medical school "is a state agency" and a resident of a supported medical school "is an employee of a state agency . . . for purposes of determining liability, if any." Tex. Health & Safety Code § 312.007(a). As an employee of a state agency, complaining about the denial of his motion for summary judgment based on an assertion of immunity, Klein was entitled to bring this interlocutory appeal like any other state employee, and the court of appeals erred in holding otherwise.

\* \* \*

The judgment of the court of appeals is reversed, in part, and Klein's interlocutory appeal is remanded to the court for consideration of the merits.

Justice WILLETT filed a concurring opinion.

Justice WILLETT, concurring.

The Court is right that Chapter 312 extends to Baylor College of Medicine resident-physicians the same protection and benefits enjoyed by state agency employees providing services at public hospitals.

The Court is also right that Chapter 312 compels this answer "by its own terms."[1] Because "the words of the chapter" decide this case,[2] it is imprudent to look outside those words, specifically by peeking into legislative minutiae surrounding the passage of Chapter 312's predecessor. As today's case can be decided without consulting legislative history, it should be decided without consulting legislative history.

The Court says the Code Construction Act "guides our analysis"[3] and permits consideration of several extra-textual factors beyond the Legislature's chosen language, including legislative history. The Act, phrased in permissive language ("a court *may* consider"),[4] indeed invites judges to consult factors like legislative history "whether or not the statute is considered ambiguous on its face."[5] Several of our cases, both before and after enactment of the Code Construction Act, posit a simpler and less-manipulable principle: unambiguous text equals dispositive text.

- "Where text is clear, text is determinative of [legislative] intent."[6]

- "If a statute is clear and unambiguous, we apply its words according to their common meaning without resort to rules of construction or extrinsic aids."[7]

- "[O]ver-reliance on secondary materials should be avoided, particularly where a statute's language is clear. If the text is unambiguous, we must take the Legislature at its word and not rummage around in legislative minutiae."[8]

- "Unless a statute is ambiguous, we must follow the clear language of the statute. This principle has been set forth in a number of Texas cases .... [and] adopted and utilized by this court many times."[9]

- "If the disputed statute is clear and unambiguous extrinsic aids and rules of statutory construction are inappropriate...."[10]

- "If the statute being construed is plain and unambiguous, there is no need to resort to rules of construction, and it would be inappropriate to do so."[11]

Faced with unequivocal language, "the judge's inquiry is at an end."[12] Today's holding is firmly rooted in the statutory text—"[i]n the words of the chapter,"[13] declares the Court—and our analysis should end there; definitive ought to be determinative. Mining legislative minutiae to divine legislative intent may be commonplace, but as we have held, relying on such materials is verboten where the statute itself is absolutely clear.[14]

---

1. 315 S.W.3d at 8.

2. *Id.* at 8.

3. *Id.* at 6.

4. TEX GOV'T CODE § 311.023 (emphasis added).

5. *Id.*

6. *Entergy Gulf States, Inc. v. Summers,* 282 S.W.3d 433, 437 (Tex.2009).

7. *In re Estate of Nash,* 220 S.W.3d 914, 917 (Tex.2007).

8. *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson,* 209 S.W.3d 644, 652 n. 4 (Tex.2006).

9. *RepublicBank Dallas, N.A. v. Interkal, Inc.,* 691 S.W.2d 605, 607 (Tex.1985).

10. *Cail v. Serv. Motors, Inc.,* 660 S.W.2d 814, 815 (Tex.1983).

11. *Ex parte Roloff,* 510 S.W.2d 913, 915 (Tex. 1974).

12. *Sheshunoff,* 209 S.W.3d at 652.

13. 315 S.W.3d at 8.

14. *Sheshunoff,* 209 S.W.3d at 651–52. *See also, e.g., Entergy,* 282 S.W.3d at 437 ("*Only when those words are ambiguous* do we 'resort to rules of construction or extrinsic aids.'"

I suppose it is fortunate that the senate bill analysis in today's case is consonant with Chapter 312's text. But what about tomorrow's case, where a shrewd snippet from a bill analysis (perhaps unread), committee hearing (perhaps unattended), or floor debate (perhaps unheard) calls into question what the statute unquestionably requires? The peril in citing such background materials even to reinforce what the statute already makes clear ("by its own terms,"[15] as the Court says today) is that it suggests the statute—the words that everyday Texans use to guide their behavior—is not in fact controlling, but is instead vulnerable to challenge by a stray comment entombed somewhere in the legislative record. Questions abound:

- What if the text, unambiguous on its face, commands X but a committee witness testifies Y?

- What if the text, unambiguous on its face, requires X but the judge dislikes the "consequences of [that] particular construction"?[16]

- What if the text, unambiguous on its face, compels X but that outcome clashes with what the judge considers "a just and reasonable result"?[17]

- What if the text, unambiguous on its face, mandates X but the judge believes that result subordinates the "public interest" to "private interest"?[18]

My view: judicial deference requires that judges read the laws that govern our lives in a manner faithful to what those laws actually say.

That said, I accept a confined role for extra-textual aids when laws are nebulous and susceptible to varying interpretations or when necessary to fill in gaps left (perhaps intentionally) by the Legislature. But even then, and preferably only then, we proceed "cautiously,"[19] mindful that such materials conflict as often as they converge, and that our goal is "to solve, but not to create, an ambiguity."[20]

(emphasis added) (quoting *In re Estate of Nash*, 220 S.W.3d at 917)).

As I noted in *AIC Management v. Crews*, Justice Scalia, the foremost critic of supplementing clear statutory text with legislative history, has stated his position plainly:

As today's opinion shows, the Court's disposition is required by the text of the statute.... That being so, it is not only (as I think) improper but also quite unnecessary to seek repeated support in the words of a Senate Committee Report—which, as far as we know, not even the full committee, much less the full Senate, much much less the House, and much much much less the President who signed the bill, agreed with. Since, moreover, I have not read the entire so-called legislative history, and have no need or desire to do so, so far as I know the statements of the Senate Report may be contradicted elsewhere.

Accordingly, because the statute—the only sure expression of the will of Congress—says what the Court says it says, I join in the judgment.

246 S.W.3d 640, 650 n. 5 (Tex.2008) (Willett, J., concurring in the judgment) (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 267, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004) (Scalia, J., concurring in the judgment)).

15. 315 S.W.3d at 8.

16. Tex. Gov't Code § 311.023(5) (the "consequences of a particular construction" is another permissive factor the Code Construction Act says courts may consider, "whether or not the statute is considered ambiguous on its face").

17. *Id.* § 311.021(3) ("it is presumed" that the Legislature, in enacting a statute, intended "a just and reasonable result").

18. *Id.* § 311.021(5) ("it is presumed" that the Legislature, in enacting a statute, intended that "public interest is favored over any private interest").

19. *Sheshunoff*, 209 S.W.3d at 652 & n. 4.

As we have held, the "truest manifestation" of what lawmakers intended is what lawmakers enacted—"the literal text they voted on."[21] And where the Legislature's words yield a single inescapable interpretation, they are not only the best evidence of intent but the exclusive evidence. "The statute itself is what constitutes the law; it alone represents the Legislature's singular will, and it is perilous to equate an isolated remark or opinion with an authoritative, watertight index of the collective wishes of 181 individual legislators, who may have 181 different motives and reasons for voting the way they do."[22]

The Legislature passes and the Governor signs bills, not bill analyses, and we are governed by laws, not by legislative histories. So long as judges resort to external materials even when statutes are clear, lawmakers and lobbyists will keep peppering the legislative record with their preferred interpretation, not to inform legislators enacting statutes but to influence judges interpreting them. And then, when litigation ensues, statutory construction devolves into statutory excavation. The legal scavenger hunt begins, and the often-contradictory tidbits are unearthed and cited—perhaps inaccurately, selectively, or misleadingly[23]—in order to hoodwink earnest judges and enable willful ones to reach a decision foreclosed by the text itself.

Supplanting (or even supplementing) the clarity of what was passed by the legislative branch and signed by the executive branch with what an individual legislator thought, staffer wrote, witness testified, lobbyist assured, or interest group asserted invites jurisprudential kudzu. And once it takes hold, it threatens to choke off the surest guarantee of modest, no-favorites judging: taking the Legislature at its word.

Materials beyond the statute matter little, actually not at all, when the statute itself decides the case. Boiled down, my view is less prudish than prudent: since it is not necessary to look further, it is necessary not to look further.[24] Here, I would not look beyond the words of the chapter since the answer is found "[i]n the words of the chapter."[25]

---

**20.** *United States v. Shreveport Grain & Elevator Co.*, 287 U.S. 77, 83, 53 S.Ct. 42, 77 L.Ed. 175 (1932) (quoting *Hamilton v. Rathbone*, 175 U.S. 414, 421, 20 S.Ct. 155, 44 L.Ed. 219 (1899)).

**21.** *Sheshunoff*, 209 S.W.3d at 651.

**22.** *AIC Mgmt.*, 246 S.W.3d at 650 (Willett, J., concurring in the judgment) (citing Frank H. Easterbrook, *Text, History, and Structure in Statutory Interpretation*, 17 HARV. J.L. & PUB. POL'Y 61, 68 (1994) ("Intent is elusive for a natural person, fictive for a collective body.")).

**23.** *See Entergy*, 282 S.W.3d at 473 (Willett, J., concurring).

**24.** *Cf. VanDevender v. Woods*, 222 S.W.3d 430, 432–33 (Tex.2007). ("Judicial restraint cautions that when a case may be decided on a non-constitutional ground, we should rest our decision on that ground and not wade into ancillary constitutional questions. In such cases, 'the cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more—counsels us to go no further.'" (footnote omitted) (quoting *PDK Labs., Inc. v. U.S. Drug Enforcement Admin.*, 362 F.3d 786, 799 (D.C.Cir. 2004) (Roberts, J., concurring))).

**25.** 315 S.W.3d at 8.