

# Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

Nos. 04-12-00511-CV & 04-12-00512-CV

**THE STATE OF TEXAS FOR THE BEST INTEREST AND PROTECTION OF D.V.**

From the Probate Court No. 1, Bexar County, Texas
Trial Court Nos. 2012-MH-1918 & 2012-MH-1880
Honorable Polly Jackson Spencer, Judge Presiding[1]

Opinion by:     Catherine Stone, Chief Justice

Sitting:        Catherine Stone, Chief Justice
                Karen Angelini, Justice
                Sandee Bryan Marion, Justice

Delivered and Filed:  December 19, 2012

AFFIRMED

        D.V. appeals the trial court's orders granting an application for temporary commitment for mental illness and an application to compel psychoactive medications.  In both appeals, D.V. challenges the legal and factual sufficiency of the evidence to support the trial court's order committing her for court-ordered temporary mental health services.  Absent that order, D.V. contends the trial court could not have entered the order compelling psychoactive medications.  We affirm the trial court's orders.

### STANDARD OF REVIEW

        The burden of proof for an involuntary commitment is by clear and convincing evidence.  TEX. HEALTH & SAFETY CODE ANN. § 574.034(a) (West 2010).  Clear and convincing evidence

---

[1] The Honorable Oscar Kazen presided over the hearing and verbally made the rulings on the underlying applications.  The Honorable Polly Jackson Spencer signed the written orders.

is "'that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *State v. K.E.W.*, 315 S.W.3d 1, 20 (Tex. 2010) (quoting *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979)); *see also In re C.E.*, 100 S.W.3d 368, 369 (Tex. App.—San Antonio 2002, no pet.).

Because the burden of proof for an involuntary commitment is clear and convincing evidence, we apply a heightened standard of review. *State ex rel. D.W.*, 359 S.W.3d 383, 385 (Tex. App.—Dallas 2012, no pet.). When we consider a legal sufficiency challenge, "we review all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true." *State v. K.E.W.*, 315 S.W.3d at 20. "We resolve disputed fact questions in favor of the finding if a reasonable factfinder could have done so, and we disregard all contrary evidence unless a reasonable factfinder could not have done so." *Id.* "When reviewing factual sufficiency, we must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing and then determine whether, based on the entire record, a fact finder could reasonably form a firm conviction or belief that the allegations in the petition were proven." *State ex rel. D.W.*, 359 S.W.3d at 385 (citing *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

### STATUTORY REQUIREMENTS FOR TEMPORARY COMMITMENT

"The judge may order a proposed patient to receive court-ordered temporary inpatient mental health services only if the judge or jury finds, from clear and convincing evidence, that:

(1)     the proposed patient is mentally ill; and

(2)     as a result of that mental illness the proposed patient:

    (A)     is likely to cause serious harm to himself;

    (B)     is likely to cause serious harm to others; or

(C)     is:

(i)      suffering severe and abnormal mental, emotional, or physical distress;

ii)      experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and

(iii)     unable to make a rational and informed decision as to whether or not to submit to treatment."

TEX. HEALTH & SAFETY CODE ANN. § 574.034(a) (West 2010). "If the judge or jury finds that the proposed patient meets the commitment criteria prescribed by Subsection (a), the judge or jury must specify which criterion listed in Subsection (a)(2) forms the basis for the decision." *Id.* at § 574.034(c). "To be clear and convincing under Subsection (a), the evidence must include expert testimony and, unless waived, evidence of a recent overt act or a continuing pattern of behavior that tends to confirm:

(1)     the likelihood of serious harm to the proposed patient or others; or

(2)     the proposed patient's distress and the deterioration of the proposed patient's ability to function."

*Id.* at § 574.034(d).

### COMMITMENT EVIDENCE

The only witness to testify at the hearing was Dr. Daniel Leal, a psychiatrist. Dr. Leal diagnosed D.V. as having "bipolar disorder manic with psychotic features," which is a condition that substantially impairs D.V.'s thought, perception of reality, emotional process, or judgment. Dr. Leal stated his diagnosis was based on D.V.'s medical records, patient history, and personal knowledge.

With regard to a recent overt act or continuing pattern of behavior, Dr. Leal reported that D.V. has had eight to ten hospitalizations since the age of 19 and was 25 at the time of the hearing. D.V. recently traveled from her home in Dallas to Eagle Pass for a job, borrowing a car from a friend in which she probably had an accident. D.V. stayed at a hotel; however, she was arrested when she was unable to pay the hotel bill. The charges were subsequently dropped when they realized D.V. might have a mental illness. D.V. was placed on a bus to return to Dallas; however, while in route, she became concerned that "they" were trying to take her black bag which resulted in her being verbally threatening toward the bus driver while he was driving. As a result, D.V. was removed from the bus when it stopped in Seguin.

While hospitalized, Dr. Leal observed that D.V. remained in bed except to eat dinner and did not interact with the community at large. Dr. Leal also observed D.V. pacing the hallways and talking to herself. When D.V. does engage with other individuals, some sort of verbal altercation results because of some of the comments D.V. makes.

Dr. Leal stated that D V. is suffering severe and abnormal mental, emotional, or physical distress as a result of her illness and substantial mental or physical deterioration in her ability to function independently. Dr. Leal stated that D.V.'s deterioration prevents her from providing for her own health and safety because she is unable to organize herself. D.V.'s longest period of employment had been six months, and she had been asked to leave jobs because she either is unable to focus or concentrate during a manic phase or becomes paranoid toward other individuals in her environment. D.V. had refused permission for the staff to contact any of her family in Dallas, and D.V. had no plans about how she could return home. Dr. Leal believed that if D.V. were released, she would end up in another county under arrest or in another psychiatric facility. With regard to her treatment, D.V. refused to attend meetings to discuss her disposition, medication, or status. D.V. also refused to attend the hearing on the commitment application.

**APPLICATION OF LAW TO THE FACTS**

At the conclusion of the hearing, the judge specified in his order that the basis for his decision was the criterion listed in Subsection (a)(2)(C).[2] In this case, the record contains Dr. Leal's expert testimony that D.V. was suffering severe and abnormal mental, emotional, or physical distress as demonstrated by the behavior in which she engaged. Dr. Leal also testified that D.V. was experiencing substantial mental or physical deterioration of her ability to function independently as evidenced by her traveling to Eagle Pass with no plan for her care and her inability to formulate a plan for her care if released. Dr. Leal further testified that D.V. was unable to even engage in discussions about her treatment in order to reach a rational and informed decision regarding her treatment. Finally, D.V.'s actions, including traveling from Dallas to Eagle Pass and checking into a hotel without the funds to pay for the room, verbally threatening the bus driver which led to her removal from the bus, and her talking to herself and engaging in verbal altercations with other individuals in the hospital, are evidence of a continuing pattern of behavior that tends to confirm her distress and the deterioration in her ability to function. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(d) (West 2010).

Having reviewed the record as a whole, we conclude the foregoing evidence permitted the judge to form a firm belief or conviction that the findings necessary to support D.V.'s temporary commitment were proven or true. Accordingly, the evidence is legally and factually sufficient to support her temporary commitment, and we affirm the commitment order.

The only basis on which D.V. challenges the medication order is the sufficiency of the evidence to support her commitment. She claims that if she had not been involuntarily

---

[2] As previously noted, subsection (a)(2)(C) requires findings that D.V. is: "(i) suffering severe and abnormal mental, emotional, or physical distress; (ii) experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and (iii) unable to make a rational and informed decision as to whether or not to submit to treatment." TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(2)(C) (West 2010).

committed, an order compelling psychoactive medications would not have been entered. Because we have held that the evidence is sufficient to support D.V.'s commitment, we also affirm the medication order.

**CONCLUSION**

The probate court's orders are affirmed.

Catherine Stone, Chief Justice