

# KEN PAXTON

ATTORNEY GENERAL OF TEXAS

May 11, 2017

The Honorable Marco A. Montemayor
Webb County Attorney
1110 Washington Street, Suite 301
Laredo, Texas 78040

Opinion No. KP-0148

Re: Applicability of the International Energy Conservation Code to new school district building construction after November 1, 2016 (RQ-0141-KP)

Dear Mr. Montemayor:

Your question concerns the applicability of the International Energy Conservation Code. Specifically, you ask

> [w]hether all new school district building construction begun after November 1, 2016 require[s] adherence to the latest published edition of the International Energy Conservation Code, which applies to commercial buildings, as provided under Texas Health & Safety Code § 388.003(b) and as promulgated by Texas Administrative Rule under Title 34, Chapter 19, rule § 19.53(b)[.][1]

Chapter 388 of the Health and Safety Code establishes Texas's building energy performance standards. See TEX. HEALTH & SAFETY CODE §§ 388.001–.012. It contains legislative findings regarding the need for an effective building energy code to reduce pollutants and to ensure reliable and affordable energy for residents and businesses in Texas's unique climate, which typically requires more energy for cooling than for heating. See id. § 388.001(a)–(b). Subsection 388.003(a) expressly adopts specified energy efficiency provisions of the International Residential Code for single-family residential construction. See id. § 388.003(a). Subsection 388.003(b), about which you ask, adopts the "International Energy Conservation Code as it existed on May 1, 2001, . . . as the energy code for use in this state for all other residential, commercial, and industrial construction." Id. § 388.003(b). Subsection 388.003(b) also expressly grants the State Energy Conservation Office ("SECO") authority to "adopt and substitute for that energy code the latest published edition of the International Energy Conservation Code" based on certain findings. Id.; see also 34 TEX. ADMIN. CODE § 19.53(b) (2017) (Comptroller of Pub. Accounts, Tex. Bldg. Energy Performance Standards) (adopting, effective November 1, 2016, the 2015 version of the International Energy Conservation Code). In addition, chapter 388 authorizes

---

[1]Letter from Honorable Marco A. Montemayor, Webb Cty. Att'y, to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (Nov. 10, 2016), https://www.texasattorneygeneral.gov/opinion/requests-for-opinion-rqs ("Request Letter").

municipalities to adopt local amendments. TEX. HEALTH & SAFETY CODE § 388.003(d); *see also* *id.* § 388.003(e) (limiting, in many instances, a municipality's adoption of local amendments that "result in less stringent energy efficiency requirements" than provided by the International Energy Conservation Code).

In light of potential differing governing codes in different municipalities, the rules of the Texas Education Code regarding construction standards for school facilities provide direction to school districts. *See* 19 TEX. ADMIN. CODE § 61.1036(f)(1)–(f)(2) (2017) (Tex. Educ. Agency, Comm'rs Rules Concerning Sch. Facilities); *see also* TEX. EDUC. CODE § 46.008(a) (requiring the Texas Education Commissioner to establish standards for the adequacy of school facilities). A school district in an area that adopted a local construction code must comply with that code. 19 TEX. ADMIN. CODE § 61.1036(f)(1) (2017). A school district in an area that has not adopted a local construction code "shall adopt and use the building code and related . . . energy conservation code from the latest edition of the family of International Codes as published by the ICC."[2] *Id.* § 61.1036(f)(2)(A). Thus, the specific code applying to a particular school district will depend on the local adoption of restrictions, and we cannot provide a blanket answer that will apply to all school districts. However, we can advise you about the 2015 International Energy Conservation Code's applicability to school building construction in those jurisdictions that adopted the 2015 International Energy Conservation Code or where it governs by default. With respect to these jurisdictions, you ask whether school buildings are "other residential, commercial, or industrial buildings" within the scope of subsection 388.003(b). *See* Request Letter at 3.

You explain that school buildings are neither "other residential" construction nor "industrial" construction and question whether the school buildings are "commercial" construction. *See id.* at 3–4. As chapter 388 does not define the term "commercial," we look to the common or particular meaning of that undefined term. *See* TEX. GOV'T CODE § 311.011(b) ("Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."). The term "commercial establishment" and related terms such as "commercial" may have a broad or narrow meaning depending on the context. *See* Tex. Att'y Gen. LO-90-16 (1990) at 2. Here, the relevant building code, the International Energy Conservation Code, which the Legislature expressly adopted, contains a particular definition of the term. The International Energy Conservation Code defines "commercial building" to mean "all buildings that are not included in the definition of 'residential building.'" Int'l Code Council, Int'l Energy Conservation Code 2015, § C202 ("General Definitions");[3] *see also* TEX. LOC. GOV'T CODE § 214.211(5)(A) (defining "commercial" in a similar context to mean "a building for the use or occupation of people for: (A) a public purpose . . . ."). Thus, because a public school building is not a residential building, it falls within the scope of "commercial" construction for purposes of the International Energy Conservation Code and likely also for purposes of chapter 388.

---

[2] The ICC refers to the International Code Council. 19 TEX. ADMIN. CODE § 61.1036(a)(14)(B) (2017).

[3] *Available at* http://codes.iccsafe.org/I-Codes.html (last visited Mar. 29, 2017).

Citing several sources of legislative history, you suggest this conclusion is contrary to the Legislature's intent as represented by the statements of various legislators. *See* Request Letter at 4. You assert that the 2013 amendments to chapter 388 were "meant to address energy efficiency standards in residential construction and not commercial construction." *Id.* The cardinal rule of statutory construction is to ascertain the Legislature's intent, and the "truest manifestation of what legislators intended is what lawmakers enacted, the literal text they voted on." *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651 (Tex. 2006). Texas courts recognize that "[s]tatements made during the legislative process by individual legislators or even a unanimous legislative chamber are not evidence of the collective intent of the majorities of both legislative chambers that enacted a statute." *Molinet v. Kimbrell*, 356 S.W.3d 407, 414 (Tex. 2011). Wary of isolated statements of legislators, the Texas Supreme Court acknowledges that the statute itself "constitutes the law; it alone represents the Legislature's singular will, and it is perilous to equate an isolated remark or opinion with an authoritative, watertight index of the collective wishes of 181 individual legislators, who may have 181 different motives and reasons for voting the way they do." *Klein v. Hernandez*, 315 S.W.3d 1, 11 (Tex. 2010). Thus, a Texas court is unlikely to rely on such statements to limit the applicability of the 2015 International Energy Conservation Code to only residential construction contrary to the statute's plain language. *See* TEX. HEALTH & SAFETY CODE § 388.003(b); *see also Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999) (stating that "legislative history cannot be used to alter or disregard the express terms of a code provision").

## S U M M A R Y

A court would likely find that school buildings are commercial construction within the scope of subsection 388.003(b) of the Health and Safety Code.

Very truly yours,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

CHARLOTTE M. HARPER
Assistant Attorney General, Opinion Committee